[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 3, 2005
THOMAS K. KAHN
CLERK**

_____

No. 03-12737

_____

D. C. Docket No. 99-01507-CV-AJ

MARK ANDREW TOBIN,

Plaintiff-Appellant,

versus

MICHIGAN MUTUAL INSURANCE CO.,

Defendant-Appellee.

_____

No. 03-12738

_____

D. C. Docket No. 02-23442-CV-AJ

CRAIG MACKAY,
individually and as personal representative of Ana
Gutierrez Mackay and Jonathan Patrick Mackay,

Plaintiff-Appellant,

versus

MICHIGAN MUTUAL INSURANCE CORPORATION,

Defendant-Appellee.

_____

No. 03-12739
_____

D. C. Docket No. 99-01102-CV-AJ

HELEN J. HUNTER, individually
and on behalf of all others
similarly situated,

                                        Plaintiff-Appellant,

                        versus

MICHIGAN MUTUAL INSURANCE CORPORATION,
a Michigan Corporation,

                                        Defendant-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

**(February 3, 2005)**

Before BARKETT, HULL and COX, Circuit Judges.

PER CURIAM:

    In this declaratory judgment action, plaintiffs Mark Andrew Tobin, Helen J.

Hunter, and Craig MacKay (the "plaintiffs") leased vehicles from Ford Motor

2

Company or a Ford subsidiary (collectively "Ford")[1] and now seek to recover under an insurance policy that defendant Michigan Mutual Insurance Company ("Michigan Mutual") issued to Ford. Because Ford and Michigan Mutual, as the contracting parties, agreed that the policy was not intended to cover retail lessees of Ford, the district court reformed the policy between Ford and Michigan Mutual to exclude medical payment and uninsured motorist coverage to retail lessees, including the plaintiffs. After review of plaintiffs' appeal, we certify questions to the Florida Supreme Court.

## I. FACTUAL BACKGROUND

### A. Plaintiffs' Leases with Ford

This consolidated appeal arises out of three separate automobile accidents involving vehicles leased from Ford. Mark Tobin, while driving a vehicle that he leased from Ford, was injured in an accident with an uninsured driver. Helen Hunter was similarly injured in an accident with an uninsured driver while driving a vehicle that she had leased from Ford. Ana and Jonathan Mackay were killed in an accident with an uninsured driver while the Mackays were traveling in a vehicle leased from Ford.

---

[1]Certain vehicles were leased from a Ford subsidiary, such as Ford Motor Credit or Jaguar Credit Corporation. For purposes of this appeal, and to simplify matters, we refer to all vehicles as leased from Ford.

The "Red Carpet" lease agreements Hunter and the Mackays entered into with Ford provide that "lessor is not providing vehicle insurance or liability insurance" and require that the lessee "must insure the vehicle during this lease." Similarly, the lease agreement for Tobin's vehicle states that "[t]he Lessee must insure the vehicle for the term of the lease."

**B.     Michigan Mutual's Policy**

Ford entered into a separate insurance agreement with Michigan Mutual (the "policy"), which contains three sections. The commercial general liability section provides coverage for Ford's premises and operations activities. The business auto section provides coverage for a group of vehicles used by Ford for business purposes. The personal auto section is designed to provide coverage to a group of vehicles assigned to Ford management personnel under the lease evaluation program. The lease agreement signed by the Ford personnel in the lease evaluation program, unlike the retail lease agreements signed by the plaintiffs here, specifically states that "the Company [Ford] provides insurance on the vehicle during the term of the lease." Ford employees who participate in the lease evaluation program also receive a certificate of no-fault insurance and an identification card that indicates their coverage under the Michigan Mutual policy.

This consolidated appeal involves only the personal auto section of the

4

Michigan Mutual policy and specifically what is entitled the personal auto policy supplement ("auto supplement") to the policy. We outline the key provisions of the auto supplement. The first page of the auto supplement is a Declarations sheet that lists the "Named Insured." Specifically, Item 1 of the Declarations sheet lists the "Named Insured" as "Ford Motor Company, its U.S. subsidiaries, and <u>any person to whom an automobile has been</u> assigned, <u>leased</u> or loaned." (Emphasis added.)[2]

Item 2 on that same Declarations sheet describes the vehicles insured as follows: "Description of Auto . . . See Endorsement ¶ FO RD 04." In turn, Endorsement ¶ FO RD 04 defines "Your Covered Auto" as vehicles with one of these three tag designations: "L – Leased Vehicles; E – Executive Vehicles; and S – Sales Vehicles." These three tag designations are used by Ford to specify vehicles assigned, leased, or loaned to Ford's employees and retirees for business or personal use. None of these tag designations is used for vehicles leased to retail customers, such as the plaintiff lessees.

Further, the auto supplement provides primary coverage to the insured for

---

[2]The definition section, applicable to the entire auto supplement, provides that throughout the policy, "you" or "your" refers to the "named insured" as follows:
        (1) The "named insured" shown in the Declarations; and
        (2) The spouse if a resident of the same household.

liability, for medical payments, and for uninsured motorist coverage. "Insured" in the medical payment section of the auto supplement is defined as:

> 1. You or any "family member:"
>     A. While "occupying" . . . a motor vehicle . . .
> 2. Any other person while "occupying" "your covered auto."

"Insured" in the uninsured motorist section of the auto supplement is defined similarly to the medical payment section as:

> 1. You or any "family member."
> 2. Any other person "occupying" "your covered auto."

In addition to primary coverage, the auto supplement contains the following language, providing "contingent loss and excess auto liability coverage" to the "Named Insured" and excluding such excess liability coverage "to lessees" as follows:

> This policy, however, shall provide contingent loss and excess auto liability coverages for autos included in the following programs:
>     a. Red Carpet Lease . . .
> but only as respects the liability of the Named Insured. No coverage is provided to lessees, agents, or permissive users.[3]

---

[3]The auto supplement defines "contingent loss" as:
> liability of the Named Insured that results in the payment of a claim when:
> i.     the lessee's underlying primary insurance limit is inadequate, or
> ii.    the lessee's insurer denies coverage.

6

Although reciting what we believe to be certain provisions at issue in this appeal, we point out that the Michigan Mutual policy, including the entire auto supplement, is in the record.[4]

## II.  PROCEDURAL BACKGROUND

### A.  Summary Judgment Motions

Tobin, Hunter, and the personal representative of the Mackays' estate filed suits against Michigan Mutual seeking uninsured/underinsured motorist ("UM/UIM") coverage under the auto supplement to the Michigan Mutual policy issued to Ford.[5]  It is the plaintiffs' position that this auto supplement is broad enough to cover them as well, and in fact must cover them under Florida law.

In ruling on certain summary judgment motions, the district court concluded that Florida law governs the interpretation of the policy.  The court further acknowledged that a Florida intermediate appellate decision in Perez v. Michigan Mutual Ins. Co., 723 So. 2d 849 (Fla. Dist. Ct. App. 1999), held that a retail lessee of Ford was covered by the same Michigan Mutual policy at issue here.

---

[4]For example, see the exhibit to plaintiff Hunter's "Amended Class Action Complaint" filed on December 10, 1999.

[5]Plaintiffs Tobin and Hunter filed separate lawsuits in federal district court, and the Mackays' lawsuit, filed in state court, was removed by Michigan Mutual to federal court. Before the bench trial in federal court, the three cases were ultimately consolidated before the same district court judge.  The district court's subject matter jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332.

The Florida court in <u>Perez</u> emphasized that Item 1 of the auto supplement lists the "Named Insured" as "Ford Motor Company, its U.S. Subsidiaries <u>and any person to whom an automobile has been</u> assigned, <u>leased</u> or loaned." (Emphasis added.) From this language, the <u>Perez</u> court concluded that retail lessees were insureds and thus entitled to coverage as persons to whom the automobile was leased.[6]

The federal district court, however, disagreed with the <u>Perez</u> decision for several reasons. First, the district court noted that Item 2 (following Item 1 on the same Declarations sheet) entitled "description of auto," in effect limits the coverage to certain vehicles and expressly directs the reader to "See Endorsement Number FO RD 04." In turn, Endorsement Number FO RD 04 to the auto supplement defines "your covered auto" under that supplement as only autos with certain tag designations, as follows:

> Any auto which has been designated with the following

---

[6]The Florida intermediate appellate court in <u>Perez</u> held as follows:
> The personal auto policy section, insures "Ford Motor Company, its subsidiaries and <u>any person to whom an automobile has been assigned to, leased or loaned</u>." (emphasis added). Therefore under this section, Perez, as a person to whom an automobile was leased to, is an insured. The UM provision provides that Michigan Mutual is obligated to pay damages which an "<u>insured</u> is legally entitled to recover from the owner or operator of a [sic] uninsured motor vehicle." (emphasis added). Coverage under the UM section is provided to the [sic] "[t]he named insured shown in the declarations." Additionally, since the same language applies to the medical payments endorsement, Perez is covered under both provisions.

<u>Perez</u>, 723 So. 2d at 850 (footnote omitted).

8

tag letters:
L - Leased Vehicles
E - Executive Vehicles
S - Sales Vehicles

It is undisputed that these tag numbers (L, E, and S) are issued to Ford employees or retirees who lease vehicles and that none of plaintiffs' vehicles has these tag numbers because plaintiffs' vehicles are in the Red Carpet lease program, a retail lease program. Secondly, the district court noted that the contingent loss-excess liability provision specifically stated that no coverage is provided to lessees under the Red Carpet Lease program, as follows:

> This policy, however, shall provide contingent loss and excess auto liability coverages for autos included in the following programs:
> a. Red Carpet Lease. . . .
> but only as respects the liability of the Named Insured. No coverage is provided to lessees, agents, or permissive users.

Thirdly, the district court examined two unpublished state court decisions that concluded that Ford's retail lessees were not covered under this same Michigan Mutual policy. Negron v. Michigan Mut. Ins. Co., No. 3:00 CV 1004 (D. Conn. July 16, 2001); Massachusetts Bay Ins. Co. v. Amerisure Cos., No. 99-3361 (D.N.J. Dec. 12, 2000). The Negron court noted that, while "a superficial reading of only the Personal Auto Policy Supplement might include the [plaintiffs] in the category of named insured, . . . the endorsements and more specific language of the policy

9

make it clear that the [plaintiffs] and their vehicle are not insured under the Michigan Mutual policy." Negron, at *12. The district court concluded that the Negron and Massachusetts Bay decisions read the policy as a whole and were far better reasoned than Perez.

Although disagreeing with Perez, the district court then acknowledged that "[a] federal court applying state law is bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." In doing so, the district court relied on these decisions. See Galindo v. ARI Mut. Ins. Co., 203 F.3d 771, 775 (11th Cir. 2000) (stating that "[a]bsent a decision by the highest state court or persuasive indication that it would decide the issue differently, federal courts follow decisions of intermediate appellate courts in applying state law"); Doyle v. Volkswagenwerk Aktiengelellschaft, 81 F.3d 139, 143 (11th Cir. 1996) (finding "persuasive data" that the Supreme Court of Georgia may not follow the intermediate appellate decision and certifying the question to Supreme Court of Georgia); Silverberg v. Paine, Webber, Jackson & Curtis, Inc., 710 F.2d 678, 690 (11th Cir. 1983) (noting that a "federal court applying state law is bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive

10

indication that the state's highest court would decide the issue otherwise").[7]

The district court further noted that "the Supreme Court of Florida has held that decisions of district courts of appeal represent the law of Florida unless they are overruled by the Supreme Court of Florida." See Pardo v. State, 596 So.2d 665, 666 (Fla. 1992). Because the Florida Supreme Court had not ruled on this issue, nor had any other Florida intermediate appellate court except Perez, the district court then sought to "determine whether there is any 'persuasive authority' that the Florida Supreme Court would decide this issue differently than the court in Perez."

The district court determined that it is probable but not likely that the Florida Supreme Court could, by looking to the whole auto supplement, decide the issue differently than the Perez court. However, the district court ultimately concluded that Florida case law did not provide a "persuasive indication" that the Florida

---

[7]Other decisions of this Court have applied the same "persuasive indication" standard. See McMahan v. Toto, 311 F.3d 1077, 1080 (11th Cir. 2002) (noting that the fact that a federal court may decide the issue differently is not a "persuasive indication that the Florida Supreme Court would agree with us and not with one of its own intermediate appellate courts, which presumably knows more about Florida law" and rescinding portions of a prior decision that applied the Florida offer of judgment statute in a manner contrary to a subsequent decision by a Florida intermediate appellate court); Miller ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1271 (11th Cir. 2002) (reversing district court interpretation of the Florida long arm statute that rejected the decision of a Florida intermediate appellate court where the district court indicated that "[b]ecause it is not a decision of the Florida Supreme Court, [the appellate court decision] does not constitute binding authority" on the issue of Florida law); King v. Guardian Life Ins. Co., 686 F.2d 894, 898 (11th Cir. 1982) (following Georgia intermediate appellate court interpretation of state statute as it pertains to policy lapse and noting rule that "[in] the absence of a decision from the state's highest court, we must adhere to the decisions of the state's intermediate appellate courts unless there is some persuasive indication that the state's highest court would decide the issue otherwise" (internal quotation marks and citation omitted)).

Supreme Court would decide the issue differently.[8]  In this regard, the district court

concluded:

> In sum, although I disagree with the decision in Perez,
> and believe that the Third District failed to apply certain
> well-established principles of contract interpretation, I
> find no "persuasive authority" that the Supreme Court of
> Florida would decide this issue differently.  I am,
> therefore, bound by the Third District's decision.
> Unfortunately, I lack the power to certify this issue to the
> Supreme Court of Florida, unlike the Eleventh Circuit.
> Perhaps, if there is an appeal, the parties will have the
> opportunity to truly discern the stance of Florida's
> highest court on whether Ford's insurance policy applies
> to retail lessees.

While following Perez in interpreting the actual policy language, the district court

also examined Ford's alternative argument that the auto supplement of the

Michigan Mutual policy, as construed in Perez, failed to demonstrate the

contracting parties' intentions and should be reformed.[9]  The district court

subsequently conducted a bench trial in all three (now consolidated) cases solely on

---

[8]The Florida cases that the district court examined involve the general principle that a court looks to the whole agreement when interpreting a contract, and not just to one particular provision in isolation.  See Excelsior Ins. Co. v. Pomona Park & Package Store, 369 So.2d 938, 941 (Fla. 1979); see also Lalow v. Codomo, 101 So.2d 390, 393 (Fla. 1958); United States Rubber Prods., Inc. v. Clark, 200 So. 385, 388 (Fla. 1941); Blackshear Mfg. Co. v. Fralick, 102 So. 753, 754 (Fla. 1925); Bituminous Cas. Corp. v. Lewis Crane Serv., Inc., 173 So.2d 715, 717 (Fla. Dist. Ct. App. 1965).

[9]At the summary judgment stage, the district court did not address the plaintiffs' alternative argument that Florida Stat. § 627.727 required that the Michigan Mutual policy be construed to provide coverage notwithstanding the parties' intentions because Michigan Mutual failed to permit Ford to make a knowing rejection of uninsured motorist coverage for the retail leased vehicles owned by Ford.

12

the issue of reformation of the policy.

**B.     Bench Trial as to Reformation Issue**

At the conclusion of the bench trial, the district court issued findings of fact and conclusions of law.  The district court found that the two persons directly responsible for drafting the policy, Dan Sobczynski of Ford and Martin Taft of Michigan Mutual, both unequivocally testified that it was their intent not to provide coverage to retail lessees and that the auto supplement was meant to provide coverage only to certain vehicles leased or loaned to current and former Ford employees.  The district court found their testimony to be credible and convincing, and concluded that Michigan Mutual satisfied its burden of introducing clear and convincing evidence that the contracting parties, Ford and Michigan Mutual, did not intend for the policy to provide any coverage to retail lessees.  Accordingly, the district court reformed the policy between Michigan Mutual and Ford to exclude any medical payment and uninsured motorist coverage to retail lessees.

The district court also rejected the plaintiffs' alternative argument that was based on Florida statute § 627.727.  The plaintiffs contended (1) that § 627.727 requires that all insureds make a knowing rejection of uninsured motorist coverage; (2) that Ford never rejected uninsured motorist coverage for its vehicles in its retail lease program; and thus (3) that Florida law forbade Michigan Mutual from denying

13

uninsured motorist coverage to the plaintiffs.

Rejecting this alternative argument, the district court reasoned that once the policy is reformed so as not to cover the plaintiffs as insureds, there is no liability coverage for vehicles in the lease program or for the retail lessees, and therefore no underlying offer of coverage to the plaintiffs that must include uninsured motorist coverage. The district court, however, did not specifically address the plaintiffs' contention that because Michigan Mutual failed to offer uninsured motorist coverage <u>to Ford</u> for vehicles in its retail lease program, the policy could not be reformed to exclude coverage from plaintiffs in their capacity as occupants of Ford owned but leased vehicles.

## IV. STANDARD OF REVIEW

This Court reviews the district court's findings of fact for clear error. <u>United States v. Puche</u>, 350 F.3d 1137, 1153 (11th Cir. 2003). Interpretation of a contract is a question of law that we review <u>de novo</u>. <u>Bragg v. Bill Heard Chevrolet, Inc.</u>, 374 F.3d 1060, 1065 (11th Cir. 2004). Likewise, the proper interpretation of a statute is a question of law that we review <u>de novo</u>. <u>Adams v. Florida Power Corp.</u>, 255 F.3d 1322, 1324 (11th Cir. 2001).

## V. DISCUSSION

### A. Unsettled Legal Questions of Florida Law

14

The parties agree that Florida law controls all issues in this appeal.  Further, the facts relevant to this appeal are basically undisputed.  The parties do not even challenge the fact findings made by the district court after the bench trial.  Rather, the appeal presents purely legal questions of Florida law regarding the interpretation of the Michigan Mutual policy, whether that policy may be reformed, and the proper construction and application of § 627.727, Florida's uninsured motorist statute.

Where there is doubt in the interpretation of state law, a federal court may certify the question to the state supreme court to avoid making unnecessary Erie guesses and to offer the state court the opportunity to interpret or change existing law.  See Alltel Communs., Inc. v. City of Macon, 345 F.3d 1219, 1225 (11th Cir. 2003); CSX Transp., Inc. v. City of Garden City, 325 F.3d 1236, 1239 (11th Cir. 2003);  Mosher v. Speedstar Div. of AMCA Int'l, Inc., 52 F.3d 913, 916-17 (11th Cir. 1995).  While there may not be a "persuasive indication" that the Florida Supreme Court would decide this case differently than Perez, there is some doubt in Florida law about the interpretation of the policy language, especially given that the Perez court focused on only Item 1 of the Declarations sheet and did not discuss Item 2 on that same Declarations sheet or other relevant parts of the auto supplement.  Additionally, these cases present difficult and apparently novel issues

15

under Florida law.

Accordingly, because this appeal depends on resolution of questions of unsettled Florida law and will affect many other cases, we have determined that issues in this case should be certified to the Florida Supreme Court.

## B. Certification to the Florida Supreme Court

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF FLORIDA, PURSUANT TO ARTICLE V, SECTION 3(B)(6) OF THE FLORIDA CONSTITUTION.

TO THE SUPREME COURT OF FLORIDA AND ITS HONORABLE JUSTICES: We certify the following questions to the Supreme Court of Florida for determination under Florida law:

(1) DOES THE DEFENDANT MICHIGAN MUTUAL HAVE ANY LIABILITY TO THE PLAINTIFFS UNDER THE POLICY IN QUESTION, AND, IF SO, WHAT IS THE EXTENT OF THAT LIABILITY?

In answering the above questions, the Florida Supreme Court may deem the following issues relevant:

(A)WHETHER PLAINTIFFS HUNTER, ROBIN AND MACKAY, WHO LEASED VEHICLES FROM FORD UNDER A RETAIL LEASE PROGRAM, ARE INSURED FOR OR ENTITLED TO UM/UIM COVERAGE UNDER THE AUTO SUPPLEMENT TO DEFENDANT MICHIGAN MUTUAL'S POLICY FOR ANY INJURIES SUSTAINED AS DRIVERS OR OCCUPANTS AS A RESULT OF THE NEGLIGENCE OF AN UNINSURED/UNDERINSURED MOTORIST?

(B) IF PLAINTIFFS ARE INSURED FOR OR ENTITLED TO ANY SUCH UM/UIM COVERAGE UNDER THE AUTO SUPPLEMENT, IS THAT COVERAGE PRIMARY COVERAGE, EXCESS COVERAGE OR BOTH?

(C) IF PLAINTIFFS ARE INSURED FOR OR ENTITLED TO ANY SUCH UM/UIM COVERAGE UNDER THE AUTO SUPPLEMENT, WHETHER THE AUTO SUPPLEMENT OF DEFENDANT MICHIGAN MUTUAL'S POLICY MAY BE REFORMED TO REFLECT THE CONTRACTING PARTIES' (FORD AND MICHIGAN MUTUAL'S ) UNDISPUTED INTENTIONS NOT TO PURCHASE OR PROVIDE SUCH UM/UIM COVERAGE IN THE AUTO SUPPLEMENT?

(D) WHETHER DEFENDANT MICHIGAN MUTUAL IN ISSUING PRIMARY COVERAGE UNDER THE AUTO SUPPLEMENT OF THE POLICY WAS SUBJECT TO AND OBLIGATED TO COMPLY WITH THE REQUIREMENTS IN FLA. STAT. § 627.727, AND IF SO, WHETHER AS TO PRIMARY COVERAGE THAT STATUTE APPLIES ONLY TO FORD OR TO THE PLAINTIFFS OR TO BOTH? FURTHER, IF APPLICABLE, DID DEFENDANT MICHIGAN MUTUAL COMPLY WITH FLA. STAT. § 627.727 AND, IF NOT, WHAT IS THE RESULT OF FAILURE TO COMPLY WITH SUCH STATUTORY REQUIREMENTS?

(E) WHETHER DEFENDANT MICHIGAN MUTUAL IN ISSUING THE EXCESS COVERAGE UNDER THE AUTO SUPPLEMENT OF THE POLICY WAS SUBJECT TO AND OBLIGATED TO COMPLY WITH THE REQUIREMENTS IN FLA. STAT. § 627.727, AND IF SO, WHETHER AS TO EXCESS COVERAGE THAT STATUTE APPLIES ONLY TO FORD OR TO THE PLAINTIFFS OR TO BOTH? FURTHER, IF APPLICABLE, DID DEFENDANT MICHIGAN MUTUAL COMPLY WITH FLA. STAT. § 627.727, AND, IF NOT, WHAT IS THE RESULT OF FAILURE TO COMPLY WITH SUCH STATUTORY REQUIREMENTS?

18

In certifying these questions, we do not restrict the Florida Supreme Court's consideration of the issues presented. "'This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are given.'" <u>Simmons v. Sonyika</u>, 2004 WL 3015741, *6 (11th Cir. Dec. 30, 2004) (quoting <u>Washburn v. Rabun</u>, 755 F.2d 1404, 1406 (11th Cir. 1985)). To assist the Florida Supreme Court in considering the certified questions, the record in this case and the parties' briefs shall be transmitted to the Court.

QUESTIONS CERTIFIED.