[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 20, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-11207

_____

D. C. Docket No. 04-00196 CV-BH

UNION PLANTERS BANK, N.A.,

Plaintiff-Appellee,

versus

THE PEOPLE OF THE STATE OF NEW YORK,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(January 20, 2006)**

Before ANDERSON, BLACK and CARNES, Circuit Judges.

PER CURIAM:

In this lien priority case, we certify three questions to the Alabama Supreme

Court because there are no cases interpreting the Alabama statutes governing

property bail bonds and when they become liens, and because we do not find clear

guidance in the statutes themselves.  "Where there is doubt in the interpretation of state law, a federal court may certify the question to the state supreme court to avoid making unnecessary Erie guesses and to offer the state court the opportunity to interpret or change existing law." Tobin v. Mich. Mut. Ins. Co., 398 F.3d 1267, 1274 (11th Cir. 2005).

## I. FACTS AND PROCEDURAL HISTORY

In July 1999, Serag Khodir issued a mortgage to Union Planters Bank in the amount of $480,000, covering a property in Baldwin County, Alabama.  Almost two years later, Khodir and his business partner, Salem Hady, were indicted in New York.  The New York trial court set an appearance bond at $300,000 in favor of New York as security for Mr. Hady's appearance.  Khodir executed a property bail bond for that amount in favor of New York, and on December 7, 2001, New York placed of record in the Baldwin County Probate Office a bond executed by Khodir in order to create a lien on the property to secure the bond.  Khodir then decided to refinance his 1999 mortgage, which he had paid down to $154,000. The new mortgage was for $350,000, and represented a refinancing of the $154,000 plus $196,000.  It was recorded on February 12, 2002, and the first mortgage was recorded as cancelled on March 19, 2002.  During the title search,

the title company found the Khodir affidavit regarding the bail bond and deemed it unimportant.

On June 20, 2003, a judge of the New York State Supreme Court executed an order forfeiting bail, which was filed with the City Clerk of New York County. On September 9, 2003, Union Planters initiated a foreclosure sale and sold the property for $470,000. The amount due on the mortgage was $358,709.25. New York domesticated the bond forfeiture as a judgment in Alabama on May 10, 2004.

Union Planters brought suit to determine priority among the three lienholders.[1] After New York removed the action to federal court, the parties moved for summary judgment. The district court granted Union Planters' motion, relying heavily on an opinion issued by the Alabama Attorney General. This opinion addressed the issue of whether or not a property bail bond is invalidated if the property is sold. The opinion held that it was not. However, the opinion also indicated that the bail bond statutes apparently intended to create a lien only after

---

[1] On February 26, 2002, a mortgage in the amount of $95,000 was recorded from Khodir to Beggs & Lane, LLP. However, it has been subordinated to New York's claim and so was not at issue below or on appeal. Also not at issue in this case is the $154,000 amount of Union Planters' original mortgage, which was refinanced in connection with its subsequent mortgage. The parties agree that Union Planters' $154,000 amount has the first priority; they contest only the balance of Union Planters' mortgage which was advanced after the recording of New York's bail bond.

the final forfeiture is entered.  The district court held that Union Planters'

mortgage was first in line, construing the statutes as permitting the filing and

creation of a lien only after the forfeiture, and that took place after the second

mortgage was entered.

## II. DISCUSSION

A.  Does a bail bond become a lien when filed contemporaneously or only after it
has been forfeited?

This question turns on the construction of Alabama statutes.  Alabama Code

§ 15-13-152, which establishes the procedure for creating the bond, reads, in

pertinent part:

> The affidavit shall be signed by the owners of the properties and the
> affidavit shall be the same as a lien against the property, and upon the
> rendition of a final forfeiture, the state or its subdivisions may
> proceed on the document for sale of the property to satisfy the
> judgment.

Ala. Code § 15-13-152.  This language would suggest that the affidavit created an

enforceable lien and that the inquiry would end there.  However, § 15-13-156

provides a procedure for filing the affidavit and muddies the water.  This statute

reads:

> (a) Clerks of all courts of the state and its subdivisions may file the
> 'lien and affidavit' form in the probate court of the county where the
> property is located immediately after a final forfeiture is ordered by

4

any court of the State of Alabama or its subdivisions. The probate court shall file and record it in its real property recordings and there shall be no charge to the city or state assessed or collected.

(b) In all final forfeiture cases of property bail, where the judgment has been satisfied by the sureties or the court has set aside the final forfeiture and the sureties liability has been discharged by law, the clerk of the court shall see that any 'lien and affidavit' form previously filed is so cancelled. The clerk may cancel it by issuing a cancellation of the lien. The cancellation shall be in writing and filed and recorded by the judge of probate of the county where the property is located. The probate court shall not charge a filing or recording fee to the city or state.

Ala. Code § 15-13-156. It is unclear whether subsection (a) should be construed to permit filing the affidavit only after final forfeiture, as Union Planters argues, or merely means that if it is filed then there shall be no filing fee, as New York argues.

Union Planters relies upon the Attorney General Opinion. That Opinion indicated that § 15-13-156 was controlling, even though it did cite the language in §15-13-152, which states the affidavit is the same as a lien against the property. Ala. Op. Att'y Gen. No. 2000-140, 2000 WL 33310643 (2000). The Opinion stated: "There is no prescribed procedure for filing a lien or otherwise securing the property from subsequent encumbrances or sale by the owners/sureties after the property bond is approved and the defendant released and prior to a final forfeiture being entered." Id. at *1. The Attorney General also said: "Although the

Legislature apparently did not intend for a lien on the property to be created until after the entry of final forfeiture, filing the affidavit in the office of the probate judge prior to this time to provide notice that the owner(s) have pledged the property as security for bail is not prohibited; it just is not a filing which is authorized without prepayment of costs." Id. at *2. The Opinion also noted that there was no "express statutory guidance on the procedure to be followed in accepting a pledge of real property for bail or ensuring that the state's interest in the pledged property is adequately protected" before the defendant's appearance at trial or entry of final forfeiture. Id.

On the other hand, New York notes that the Attorney General Opinion is only persuasive authority. Ala.Code 1975, § 36-15-19; State, Dep't of Revenue v. Arnold, – So.2d –, 2005 WL 628883 at *2 (Ala. Mar. 18, 2005) (stating opinions are not controlling, but merely advisory, and serve to offer protection from liability only to "such officer" to whom that opinion is directed). New York also argues that Ala. Code § 15-13-156(a) merely says that the affidavit "may" be filed immediately after forfeiture; it does not say that it may be filed only then. Rather, if filed after forfeiture (or filed again then), § 15-13-156(a) provides that there should be no recording fee (or additional fee). New York suggests that its lien was properly filed on December 7, 2001, upon payment of the usual filing fees and

6

pursuant to Alabama's general recording statute.  See Ala. Code § 35-4-58.

Because the statutes create an ambiguity about when the property bail bond becomes a lien, and because there are no Alabama cases that indicate what the proper interpretation should be, we respectfully certify to the Alabama Supreme Court the following questions:

1.  DOES THE PROPER CONSTRUCTION OF ALA. CODE § 15-13-152 AND § 15-13-156 PERMIT THE HOLDER OF THE BAIL BOND TO FILE THE AFFIDAVIT BEFORE FORFEITURE OF THE BOND; AND  IF SO, DOES THAT FILING CREATE AN ENFORCEABLE LIEN AT THAT TIME?  IF YES, DOES THAT FILING MEAN THAT THE FILER WOULD TAKE PRECEDENCE IN A FORECLOSURE OVER THE LIENS OF SUBSEQUENT FILERS SUCH AS UNION PLANTERS?

B.  Did the bail bond affidavit create an equitable mortgage?

New York argues in the alternative that, assuming arguendo that its lien may lack some formal requisites, the affidavit would create an equitable mortgage. New York cites as authority Murphy v. Carrigan, 116 So.2d 568, 571-72 (Ala. 1959), which sets out the requirements for an equitable mortgage, and notes that "[a]lthough a conveyance . . . may lack the formal requisites of a mortgage . . .

7

equity will look to the substance." New York also cites Barnett v. Waddell, 27 So.2d 1 (Ala. 1946), and Moorer v. Tensan Land & Timber Co., 20 So.2d 105 (Ala. 1944). Union Planters argues that New York waived this argument by failing to raise it properly below. However, our review of the record reveals that the argument was fairly presented to the district court and the issue was joined. Therefore, the issue was preserved, even though the district court did not address it specifically.

Alabama law requires that a lien be based on debt that is not contingent. See, e.g., First State Bank v. SouthTrust Bank, 519 So.2d 496, 497 (Ala. 1987). "In order for an equitable mortgage to exist, it is essential that the mortgagor have a mortgageable interest in the property sought to be charged as security; that there be clear proof of the sum which it was to secure; that there be a definite debt, obligation or liability to be secured, due from the mortgagor to the mortgagee; and the intent of the parties to create a mortgage, lien or charge on property sufficiently described or identified to secure an obligation." Murphy, 116 So.2d at 571. New York argues that each requirement is satisfied: that Khodir clearly had a mortgageable interest in the property; that the $300,000 sum secured was clear; that the obligation to produce the accused in court was definite and absolute (and no more contingent or inchoate than any other mortgage); that the intent to create a

8

lien was clear; and that the property was adequately described.

Because there are no Alabama cases addressing this issue in the context of bail bonds, we certify the following question:

2.  IF NEW YORK IS PRECLUDED FROM TAKING PRECEDENCE PURSUANT TO THE RESOLUTION OF THE PRECEDING QUESTION, DID THE AFFIDAVIT NEVERTHELESS CREATE AN EQUITABLE MORTGAGE; AND IF SO, WOULD NEW YORK TAKE PRECEDENCE OVER THE LIENS OF SUBSEQUENT FILERS SUCH AS UNION PLANTERS?

C.  Did Union Planters' actual notice of the bail bond mean that its mortgage is secondary?

Finally, New York argues that because Union Planters had actual knowledge of the bail bond, the bail bond takes precedence. New York points to the fact that it is undisputed that Union Planters' agent, the title searcher, actually copied the affidavit during the title search. New York argues that a subsequent purchaser or mortgagee who has actual notice of a previously existing lien takes subject to the prior lien. See, e.g., Olympia Produce v. Associates Fin. Serv., 584 So.2d 477, 479 (Ala. 1991) ("A person taking a real property interest can have either actual or constructive knowledge of a prior interest in the property, or can

9

have both kinds of knowledge. Either gives the holder of the prior interest priority over the person taking the subsequent interest."). Union Planters replies that even though it did have notice of the affidavit, the affidavit did not create an enforceable lien. Therefore, Union Planters continues, actual notice does not create a change in priorities.

Thus we certify this final question:

3. IF NEW YORK DOES NOT TAKE PRECEDENCE PURSUANT TO THE RESOLUTION OF EITHER OF THE TWO PRECEDING QUESTIONS, CAN IT NEVERTHELESS TAKE PRECEDENCE BECAUSE UNION PLANTERS' AGENT, THE TITLE SEARCHER, HAD ACTUAL KNOWLEDGE OF THE AFFIDAVIT?

Our statement of the questions to be certified is not meant to limit the scope of inquiry by the Alabama Supreme Court. "This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are given." Washburn v. Rabun, 755 F.2d 1404, 1406 (11th Cir. 1985). As mentioned above, an answer to one of the questions may render resolution of the other ones unnecessary. In order to assist the court's consideration of the case, the entire record, along with the briefs of the parties, shall be transmitted to the Alabama

10

Supreme Court.[2]

 QUESTIONS CERTIFIED.

    [2] Union Planters also argues in its brief on appeal that New York has not properly domesticated and recorded its judgment of forfeiture, and thus that New York cannot yet enforce its judgment.  However, if the Alabama Supreme Court answers one of the three certified questions in favor of New York, it is our understanding that that would constitute a holding that New York's previously filed lien has priority over the February 12, 2002, increase in Union Planters' mortgage, and thus would answer the priority of liens questions posed in this declaratory judgment action.  It is our understanding that New York could then proceed in the appropriate manner to enforce its lien.  On the other hand, if the Alabama Supreme Court decides all three certified questions in favor of Union Planters, then it is our understanding that it will have been decided that Union Planters has priority, and thus answer the questions posed in this appeal.