948 So.2d 692 (2006)
Mark Andrew TOBIN, et al., Appellants,
v.
MICHIGAN MUTUAL INSURANCE COMPANY, Appellee.
No. SC05-214.
Supreme Court of Florida.
December 21, 2006.
*693 Christopher J. Lynch of Hunter, Williams and Lynch, P.A., Coral Gables, FL, for Appellant.
Wendy F. Lumish of Carlton Fields, P.A., Miami, FL, and Stephen J. Harburg of O'Melveny and Myers, Washington, D.C., for Appellee.
PER CURIAM.
We have for review the following question of Florida law certified by the United States Court of Appeals for the Eleventh Circuit that is determinative of a cause pending in that court and for which there appears to be no controlling precedent from this Court:
DOES THE DEFENDANT MICHIGAN MUTUAL HAVE ANY LIABILITY TO THE PLAINTIFFS UNDER THE POLICY IN QUESTION, AND, IF SO, WHAT IS THE EXTENT OF THAT LIABILITY?
Tobin v. Mich. Mut. Ins. Co., 398 F.3d 1267, 1275 (11th Cir.2005). We have jurisdiction. See art. V, § 3(b)(6), Fla. Const. We rephrase the certified question to more accurately address the procedural setting we are facing, as follows:
WHETHER THE PLAINTIFFS ARE ENTITLED TO UNINSURED/UNDERINSURED MOTORIST COVERAGE UNDER THE POLICY AS REFORMED.

FACTS AND PROCEDURAL HISTORY
The facts of the underlying action are not in dispute. Appellants Tobin, Hunter, and the Mackays[1] were either injured or killed in accidents with uninsured drivers while operating or occupying vehicles leased from Ford Motor Company. See Tobin, 398 F.3d at 1269.[2] The lease agreements entered into with regard to these vehicles each contained language to the effect that the lessees would be responsible for obtaining insurance for these vehicles. Appellants Hunter and the Mackays' "Red Carpet" lease agreements stated that the "lessor is not providing vehicle insurance or liability insurance" and that the lessee "must insure the vehicle during this lease." Id. Appellant Tobin's lease agreement stated that "[t]he Lessee must insure the vehicle for the term of the lease." Id.
Notwithstanding the above-quoted language in the respective lease agreements, appellants seek to recover under an insurance policy issued to Ford by defendant Michigan Mutual Insurance Company ("Michigan Mutual"). See id. Appellants present the claim for insurance coverage and benefits under a theory that the insurance policy at issue did not comply with section 627.727 of the Florida *694 Statutes relating to uninsured and underinsured motorist coverage ("UM/UIM"). That statute requires that UM/UIM coverage be offered and either accepted or properly rejected by a "named insured" when an insurance policy which provides liability coverage is issued or delivered in this State and provides:
No motor vehicle liability insurance policy which provides bodily injury liability coverage shall be delivered or issued for delivery in this state with respect to any specifically insured or identified motor vehicle registered or principally garaged in this state unless uninsured motor vehicle coverage is provided therein. . . . However, the coverage required under this section is not applicable when, or to the extent that, an insured named in the policy makes a written rejection of the coverage on behalf of all insureds under the policy.
§ 627.727(1), Fla. Stat. (2004). If an insurer fails to comply with the statutory requirements, UM/UIM coverage is provided by the contract as though the required coverage had been offered and accepted by the "named insured" as a matter of law. See Am. Fire & Indem. Co. v. Spaulding, 442 So.2d 206, 208 (Fla.1983) ("[T]he statute clearly provides that uninsured motorist coverage is by operation of law equal to general liability coverage unless the named insured selects otherwise. . . . ").
The details surrounding the issuance of the Michigan Mutual policy at issue here (the "policy") as described in the Eleventh Circuit's opinion reveal:
Ford entered into a separate insurance agreement with Michigan Mutual . . ., which contains three sections. The commercial general liability section provides coverage for Ford's premises and operations activities. The business auto section provides coverage for a group of vehicles used by Ford for business purposes. The personal auto section is designed to provide coverage to a group of vehicles assigned to Ford management personnel under the lease evaluation program. The lease agreement signed by the Ford personnel in the lease evaluation program, unlike the retail lease agreements signed by the plaintiffs here, specifically states that "the Company [Ford] provides insurance on the vehicle during the term of the lease." Ford employees who participate in the lease evaluation program also receive a certificate of no-fault insurance and an identification card that indicates their coverage under the Michigan Mutual policy.
This consolidated appeal involves only the personal auto section of the Michigan Mutual policy and specifically what is entitled the personal auto policy supplement ("auto supplement") to the policy.
Tobin, 398 F.3d at 1269 (alteration in original).
The arguments in the instant matter center on four specific provisions found in the personal auto supplement to the policy, as follows: (1) The Declarations page of the personal auto supplement provides the following definitions:
Item 1. Named Insured
FORD MOTOR COMPANY, ITS U.S. SUBSIDIARIES AND ANY PERSON TO WHOM AN AUTOMOBILE HAS BEEN ASSIGNED, LEASED OR LOANED
. . . .
Item 2. Description of Auto
1. See Endorsement Number PP FO RD 04
(2) Endorsement PP FO RD 04, which modifies the personal auto supplement, states:
*695 A. By addition of this endorsement to your policy, the following replaces paragraph J. of DEFINITIONS [defining "covered auto"]:
J. "Your Covered Auto" is changed as follows:
1. Any auto which has been designated with the following tag letters:
L  Leased vehicles
E  Executive Vehicles
S  Sales Vehicles
in the records of Ford Motor Company's vehicle administration system.
(3) The uninsured motorist coverage provision states:
"Insured" as used in this Part means:
1. You or any "family member."
2. Any other person "occupying" "your covered auto."
(4) Endorsement PP FO RD 01, added exclusions which include:
2. This policy, however, shall provide contingent loss and excess auto liability coverages for autos included in the following programs:
a. Red Carpet Lease
. . . .
but only as respects the liability of Named Insured. No coverage is provided to lessees, agents, or permissive users.
In the federal district court, the appellants and Michigan Mutual both sought summary final judgment with regard to the issue of whether the appellants were provided coverage and entitled to UM/ UIM benefits under the policy at issue. The district court determined that the claimants were entitled to a summary judgment on the issue of coverage under the terms of the insurance contract based upon the decision of the Third District Court of Appeal in Perez v. Michigan Mutual Insurance Co., 723 So.2d 849 (Fla. 3d DCA 1998), which was predicated upon the determination that persons in the position of these claimants are "named insureds" under this contract. However, notwithstanding the determination of the issue of coverage and the definition of "named insured" under the contract as written, the district court conducted further proceedings and a bench trial to consider and determine whether the insurance policy should otherwise be reformed because it did not accurately reflect the intent of the contracting parties. At the conclusion of this subsequent proceeding, the district court found that Ford and Michigan Mutual had not intended to provide coverage to retail lessees under the policy. Therefore, the district court reformed the definition of "named insured" under the insurance contract to exclude any coverage for retail lessees. As a result of this reformation, the district court entered final judgment for Michigan Mutual, reasoning that "[o]nce the contract has been reformed, no motor vehicle liability policy was issued with respect to retail lessees" and, therefore, the district court concluded that section 627.727 of the Florida Statutes and the requirements contained therein for "named insureds" had no application with respect to these claimants. Appellants sought review of this judgment in the United States Court of Appeals for the Eleventh Circuit and this certified question followed.

ANALYSIS

Reformation
The federal district court ultimately denied the appellants relief here because it reformed the "named insured" provision of the insurance policy to reflect the intent of the contracting parties to exclude any coverage for retail lessees, *696 such as these appellants. Upon review, we agree with the district court's decision to reform the policy and hold that reformation was appropriate.
We have held that "[a] court of equity has the power to reform a written instrument where, due to a mutual mistake, the instrument as drawn does not accurately express the true intention or agreement of the parties to the instrument." Providence Square Ass'n., Inc. v. Biancardi, 507 So.2d 1366, 1369 (Fla.1987) (citing Blumberg v. Am. Fire & Cas. Co., 51 So.2d 182, 184 (Fla.1951)). Furthermore, the First District has implied that this broad concept of reformation would apply to the specific issue of reformation of a "named insured" clause in an insurance contract to accurately reflect the mutual intent of the contracting parties as to who was to be designated a "named insured." See Canal Ins. Co. v. Hartford Ins. Co., 415 So.2d 1295, 1297-98 (Fla. 1st DCA 1982) (implying that, although the facts did not indicate a mutual mistake, had there been a drafting mistake resulting in the "named insured" being defined other than as the parties mutually intended, reformation of the "named insured" clause would be appropriate). One commentator who has addressed this specific subject has noted that "[o]ne of the main grounds for reformation in the cases dealing with automobile liability policies is that there was a mutual mistake which caused someone other than the person intended to be insured to become the named insured." D.E. Ytreberg, Annotation, Reformation of Automobile Liability Insurance Policy by Adding to or Substituting for the Named Insured the Person Intended to Be Insured, 1 A.L.R.3d 885, § 4[a] (1965).
Following a bench trial on the issue of reformation, the district court made a finding of fact that Ford and Michigan Mutual "never . . . inten[ded] to provide coverage to retail lessees, and that the personal auto policy section was only meant to provide coverage to certain vehicles leased or loaned to Ford's current and former employees." On appeal, "[t]he findings of a trial court are presumptively correct and must stand unless clearly erroneous." Chiles v. State Employees Attorneys Guild, 734 So.2d 1030, 1034 (Fla. 1999). Based on the district court's finding of fact with respect to the parties' intention, if the definition of "named insured" on the declarations page of the policy includes retail lessees, then the imprecise wording of that definition would not reflect the parties' intended agreement. This would be a mutual mistake entitling the parties to reformation. See Biancardi, 507 So.2d at 1372 ("A mistake is mutual when the parties agree to one thing and then, due to either a scrivener's error or inadvertence, express something different in the written instrument.") (citing Blumberg, 51 So.2d at 184). Therefore, reformation was appropriate and, consequently, the appellants are not "named insureds" under the policy. We need not address what, if any, statutory provisions with regard to "named insureds" would be implicated because the insurance contract was properly reformed.

The "Other Insurance" Clause
Appellants next assert that, even if the definition of "named insured" is reformed to exclude retail lessees, the UM/ UIM coverage issue is not resolved adversely and they are still entitled to coverage under the "other insurance" clause in endorsement PP FO RD 01 which states that "contingent loss and excess auto liability" coverage is provided for Red Carpet Lease vehicles. Through this clause, appellants claim that they are at least entitled to UM/UIM coverage as Class II insureds because they were lawful occupants *697 of covered vehicles at the time of their accidents. Class II insureds "are protected only if they receive bodily injury due to the negligence of an uninsured motorist while they occupy the insured automobile of the named insured with his permission or consent." Mullis v. State Farm Mut. Auto. Ins. Co., 252 So.2d 229, 233 (Fla. 1971).
The language the appellants attempt to invoke to create their insured status as occupants of a covered vehicle is an "other insurance" provision, found in an endorsement, which replaces only the "other insurance" clause found in the underlying policy form Liability Coverage section of the personal auto supplement. The original "other insurance" clause in the underlying contract form that this endorsement replaces is the last paragraph of two policy pages "Part A  Liability Coverage." Nothing in the endorsement indicates that the replacement of the "other insurance" clause has any impact on any remaining policy provisions. In fact, the endorsement specifically states in capital font that "ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED."
An "other insurance" clause describes what occurs if other insurance coverage is available for the particular loss. It describes the application and relationship that arises if multiple insurance contracts apply to the same loss. See 8A John Alan Appleman & Jean Appleman, Insurance Law and Practice § 4909, at 70 (2005 Supp.). The "other insurance" clause at issue in the present action provides excess coverage once the policy limits of other insurance covering the same risk are exhausted and is only intended to provide excess liability coverage to the "named insured," Ford, in the event that a retail lessee's primary insurance is inadequate or the primary insurer denies coverage. The only effect of the endorsement is to afford liability coverage to Ford in the event it is exposed to damages due to an accident involving a vehicle leased through one of three programs listed in the endorsement. Appellants have no legitimate claim for liability coverage under this clause and certainly no claim for UM/UIM coverage, because the description specifically states that "[n]o coverage is provided to lessees, agents, or permissive users."
Contrary to the appellants' contention, the "other insurance" clause does not alter the description of "covered auto" found elsewhere in the policy or endorsement. The endorsement which contains the "other insurance" clause states that "[a]ll other terms and conditions remain unchanged," directing that a plain reading of the policy provisions demonstrates that the description of "covered auto" in endorsement PP FO RD 04 remains unchanged by the addition of this "other insurance" clause to the liability coverage section of the personal auto supplement. Similarly, the "other insurance" clause does not alter the definition of an "insured" under the uninsured motorist coverage section of the personal auto supplement. The appellants do not become "insureds" under the uninsured motorist coverage because that definition remains unchanged. Therefore, the language in the "other insurance" clause does not support the appellants' position that they are insureds entitled to UM/UIM coverage.

CONCLUSION
In summary, we conclude that the district court properly reformed the policy to reflect the mutual intent of the contracting parties that appellants are not "named insureds" under the policy. Additionally, the claim that appellants are within the category of being Class II insureds as occupants of "covered autos" under the reformed policy also fails. Post-reformation, *698 the appellants are neither "named insureds" nor occupants of "covered autos." Accordingly, the appellants have no relationship with the policy which would allow them to assert any rights under section 627.727 of the Florida Statutes. Following the reformation, none of the clauses the appellants seek to use to claim their insured status apply to them. Accordingly, we answer the certified question in the negative and return this case to the United States Court of Appeals for the Eleventh Circuit for further proceedings.
It is so ordered.
WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
LEWIS, C.J., concurs with an opinion.
LEWIS, C.J., concurring.
I concur in the majority's determination that the federal district court properly reformed the insurance contract at issue in the instant matter, and that appellants are not entitled to uninsured motorist coverage under the policy post-reformation because they are neither "named insureds" nor class II insureds as occupants of "covered autos." I write separately because we should answer the question certified and not begin our analysis in the "middle" of the process. The question certified is:
DOES THE DEFENDANT MICHIGAN MUTUAL HAVE ANY LIABILITY TO THE PLAINTIFFS UNDER THE POLICY IN QUESTION, AND, IF SO, WHAT IS THE EXTENT OF THAT LIABILITY?
Tobin v. Mich. Mut. Ins. Co., 398 F.3d 1267 (11th Cir.2005). The analysis begins with a determination of whether the appellants were "named insureds" under the policy prior to reformation because that is essential to any resolution in the instant matter, because if the appellants were not "named insureds," the district court's reformation of the policy was unnecessary and inappropriate.

Appellants' "Named Insured" Status
"Named insureds" are those persons defined or described by the language of the insurance contract. See Kohly v. Royal Indem. Co., 190 So.2d 819, 821 (Fla. 3d DCA 1966) ("In interpreting insurance policies, the courts have uniformly held that the term `named insured' has a restricted meaning and does not apply to any persons other than those named in the policy."). The contract at issue in the instant matter defines "named insured" as
FORD MOTOR COMPANY, ITS U.S. SUBSIDIARIES AND ANY PERSON TO WHOM AN AUTOMOBILE HAS BEEN ASSIGNED, LEASED OR LOANED.
In the context of UM/UIM coverage, an analysis of who is a "named insured" is always the first step in any analysis with regard to the statutory requirements and protections, because "named insureds" are the only persons authorized under the UM/UIM statute to reject UM/UIM coverage or to accept UM/UIM coverage at lower limits. See, e.g., Kimbrell v. Great Am. Ins. Co., 420 So.2d 1086, 1087 (Fla. 1982) ("[S]ection 627.727(1) . . . requires insurers to provide uninsured motorist coverage to policy holders in an amount equal to their bodily injury liability coverage, unless the uninsured motorist coverage is rejected by the named insured." (emphasis supplied)). This is particularly true when any issue touching upon UM/ UIM coverage by operation of the statute arises because, as indicated above, if the statutorily mandated offer and rejection or acceptance does not take place, UM/UIM coverage is provided by operation of the UM/UIM statute. See id.
*699 In concluding that summary judgment in favor of the appellants on the issue of coverage was proper, the district court in the instant matter specifically determined, based on the analysis of the Third District in Perez v. Michigan Mutual Insurance Co., 723 So.2d 849 (Fla. 3d DCA 1998), that the appellants were "named insureds" under the plain language of the insurance policy prior to reformation, i.e., "person[s] to whom an automobile has been . . . leased or loaned." In Perez, the Third District determined that the plaintiff, a retail lessee, was a "named insured" under the same insurance contract at issue in the present case. See Perez, 723 So.2d at 850-51. The Third District reasoned that under Item 1 listed on the declarations page, describing the "Named Insured" as "Ford Motor Company, its U.S. subsidiaries, and any person to whom an automobile has been assigned, leased or loaned," the plaintiff, as an individual to whom an automobile had been leased, came within the definition of a "named insured" under the plain language of the policy. See id. at 850. The Third District concluded that the insurance policy's language was unambiguous and, therefore, did "not require construction, and must be given effect as written." Id. at 851. Adopting this reasoning, the district court below determined that appellants were likewise "named insureds" under the policy. As such, they would be entitled to UM/UIM coverage under the policy by operation of section 627.727 of the Florida Statutes because neither the appellants nor any other "named insured" under the policy were offered and either accepted or properly rejected the coverage. See § 627.727, Fla. Stat. (2004).
Michigan Mutual looks to the policy definition of "covered auto" to amend the separate policy provision of "named insured," arguing that a different definition of vehicles in a separate "covered autos" provision in Endorsement [PP] FO RD 04 changes "named insureds" under the policy at issue. We have held that "insurance contracts must be construed in accordance with the plain language of the policy." Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161, 165 (Fla.2003). The definition of "named insured" on the declarations page of the policy at issue here clearly states and includes "any person to whom an automobile has been . . . leased." An interpretation of the plain meaning of that definition would, absent any modification of the definition of "named insured" elsewhere in the policy or by endorsement, include appellants retail lessees as "named insureds." See Kohly, 190 So.2d at 821 ("named insured" status is only given to those named in the policy).
Michigan Mutual attempts to change the definition of "named insured" on the declarations page of the policy, by reference to the description of a "covered auto" with the tag designations listed in Endorsement PP FO RD 04 under the definition of "covered auto," not "named insured," and conclude that the retail lessees are not "named insureds" under the policy at issue. If we adopted this reasoning, we would stretch the concept of interpretation entirely beyond that permitted by Florida law by mixing distinct insurance provisions, one policy provision and concept  "named insured"being defined by reference to a definition of an entirely different independent policy provision, definition, and concept  "covered auto." Who is a "named insured" under a policy is not altered by the description of a "covered auto" found in a separate, different provision, definition, and concept contained in an endorsement to that policy. Therefore, the tag designations listed in endorsement PP FO RD 04, which are used to describe the term "covered auto" and not "named insured," cannot be used to totally alter *700 the separate definition of "named insured" found on the declarations page in a different policy provision. There is no endorsement which modifies the definition of "named insured" in this contract. The plain and unambiguous language in the distinct contract provision on the declarations page which defines who qualifies as a "named insured" must control and dictate who is in that category without resorting to a distinct and different policy provision and definition to change the unambiguous policy language. Reference to a "covered auto" may modify or impact the vehicle or where coverage may apply, but it does not alter the definition of "named insured" as a policy term.
Even if the definition of the distinct and separate contract description of "covered auto" in Endorsement PP FO RD 04 could be construed as creating ambiguity as to the separate definition and provision of the term "named insured," principles of insurance contract construction would still require that the plaintiff retail lessees be considered "named insureds." We have held that "where policy language is subject to differing interpretations, the term should be construed liberally in favor of the insured and strictly against the insurer." State Farm Fire & Cas. Co. v. CTC Dev. Corp., 720 So.2d 1072, 1076 (Fla. 1998) (citing Container Corp. of Am. v. Md. Cas. Co., 707 So.2d 733, 736 (Fla. 1998)). Under this reasoning, an interpretation of "person to whom an automobile has been . . . leased," which clearly includes a retail lessee, should be favored over one that includes only Ford employee lessees, because the former interpretation would adhere to the rule of construing policy language subject to differing interpretations "liberally in favor of the insured and strictly against the insurer." CTC Dev. Corp., 720 So.2d at 1076.
Based on the foregoing, I would conclude that the appellants were within the definition of "named insured" and were entitled to the statutory protection related thereto under the policy at issue in its prereformation state. Therefore, the district court's reformation of the policy was the proper process to analyze this case if appellants as retail lessees were to be excluded from the definition of "named insured" under the policy. Since the majority correctly determines that reformation was appropriate in the instant matter and supported by competent substantial evidence, I concur.
NOTES
[1] Tobin, Hunter, and the Mackays will be collectively referred to as "appellants."
[2] The Eleventh Circuit's opinion indicates that although certain vehicles were leased from a Ford subsidiary, such as Ford Motor Credit or Jaguar Credit Corporation, for purposes of this appeal, and to simplify matters, it referred to all vehicles as being leased from Ford. Tobin v. Mich. Mut. Ins. Co., 398 F.3d 1267, 1269 n. 1 (11th Cir.2005). This opinion adopts that approach and also refers to Ford as the lessor of all vehicles in question.