MONACO, C.J.
 

 The petitioner, Citizens Property Insurance Corporation, seeks a writ of prohibition directed to the trial court to prevent the court from taking any further action with respect to a first-party bad faith claim brought by the respondent, Alan B. Gar-finkel. This case came to a head when the trial court denied Citizens’ motion to dismiss, and later entered an order requiring Citizens to produce its attorneys for depositions, and compelling it to produce its claims files and certain other documents for an
 
 in camera
 
 inspection. Because section 627.351(6)(r), Florida Statutes (2008), immunizes Citizens from bad faith claims, we grant the writ.
 

 This court is empowered by the Florida Constitution to issue writs of prohibition.
 
 See
 
 Art. V, § 4(b)(3), Fla. Const.;
 
 see also
 
 Fla. R.App. P. 9.030(b)(3). Prohibition is an extraordinary writ by which a superior court having appellate and supervisory jurisdiction over a lower court may prevent the lower court from exceeding its jurisdiction or usurping authority over matters not within its jurisdiction.
 
 See English v. McCrary,
 
 348 So.2d 293 (Fla.1977). It is well-established that a trial court lacks subject matter jurisdiction if a party enjoys the benefits of sovereign immunity with respect to the subject matter of the case before the court, and the issuance of the writ is appropriate to prevent the court from acting in the absence of such jurisdiction.
 
 See Circuit Court of Twelfth Judicial Circuit v. Dep't of Natural Res.,
 
 339 So.2d 1113 (Fla.1976);
 
 see also Underwood v. Univ. of Kentucky,
 
 390 So.2d 433, 435-37 (Fla. 3d DCA 1980) (Pearson, J., specially concurring). Accordingly, we have jurisdiction to consider the issue before us, and we choose to exercise that jurisdiction.
 
 [1]
 

 
 *64
 
 In the present case Mr. Garfinkel obtained a policy of windstorm insurance from Citizens covering his residence. As with many other Floridians, his residence was damaged by the multiple 2004 hurricanes. After a dispute arose concerning the extent of damage to the residence Mr. Garfinkel filed a two-count complaint to enforce his contract rights. The first count alleged a breach by Citizens of the contract of insurance, while the second count sought a declaration that the damage was covered by the policy. The parties agreed to resolve these issues using the appraisal process, and an appraisal award was eventually entered in favor of Mr. Garfinkel. When Mr. Garfinkel moved to confirm the award, he sought an amount in excess of the policy limits, asserting three distinct claims resulting from three separate occurrences. The trial court confirmed the award, but limited the amount awarded to the policy limits for a single occurrence.
 

 Mr. Garfinkel then amended his complaint, now asserting in Count I the right to a final judgment on the breach of contract claim, and in Count II a bad faith claim against Citizens under sections 624.155(l)(b)(l) and 626.954(l)(i)(3), Florida Statutes (2008). Citizens moved to dismiss on the basis of sovereign immunity, but the trial court denied the motion without elaborating on the basis for denial. When Citizens answered, it again asserted statutory and sovereign immunity, among other defenses. After Mr. Garfinkel sought discovery of its claims file and other documents, and sought to set its attorneys for deposition, Citizens objected. When the objections were overruled, Citizens sought prohibition in this court.
 

 The issue specifically before us is whether Citizens is shielded by sovereign immunity for the purposes of bad faith claims. We begin our consideration of this important issue by examining the applicable statutes.
 

 According to its enabling statute, Citizens was created by the Florida Legislature in order to ensure the existence of an orderly market for property insurance, and particularly windstorm insurance, within Florida.
 
 See
 
 § 627.351(6)(a)l., Fla. Stat. (2008). The statute continues:
 

 The Legislature finds that private insurers are unwilling or unable to provide affordable property insurance coverage in this state to the extent sought and needed. The absence of affordable property insurance threatens the public health, safety and welfare and likewise threatens the economic health of the state. The state therefore has a compelling public interest and a public purpose to assist in assuring that property in the state is insured and that it is insured at affordable rates ... It is necessary, therefore, to provide affordable property insurance to applicants who are in good faith entitled to procure insurance through the voluntary market but are unable to do so. The Legislature intends by this subsection that affordable property insurance be provided and that it continue to be provided, as long as necessary, through Citizens Property Insurance Corporation, a government entity that is an integral part of the state and that is not a private insurance company. (Emphasis supplied).
 

 Thus, it is explicitly clear that Citizens is not a private insurance company, but rather is a state body. The Legislature then endowed Citizens with immunity against all liability and suit apart from five specific exceptions:
 

 There shall be no liability on the part of, and no cause of action of any nature shall arise against, any assessable insurer or its agents or employees, the corporation or its agents or em
 
 *65
 
 ployees, members of the board of governors or their respective designees at a board meeting, corporation committee members, or the office or its representatives, for any action taken by them in the performance of their duties or responsibilities under this subsection.
 

 Such immunity does not apply to:
 

 a. any of the foregoing persons or entities for any willful tort;
 

 b. the corporation or its producing agents for breach of any contract or agreement pertaining to insurance coverage;
 

 c. the corporation with respect to issuance or payment of debt;
 

 d. any assessable insurer with respect to any action to enforce an assessable insurer’s obligations to the corporation under this subsection; or
 

 e. the corporation in any pending or future action for breach of contract or for benefits under a policy issued by the corporation; in any such action, the corporation shall be liable to the policyholders and beneficiaries for attorney’s fees under 627.428.
 

 See
 
 § 627.351(6)(r)l.a-e.
 

 The rub comes because the very next paragraph, section 627.351(6)(r)(2), provides that:
 

 2. The corporation shall manage its claim employees, independent adjusters, and others who handle claims to ensure they carry out the corporation’s duty to its policyholders to handle claims carefully, timely, diligently, and in good faith, balanced against the corporation’s duty to the state to manage its assets responsibly to minimize its assessment potential. (Emphasis supplied).
 

 Citizens argues that the plain meaning of the statute permits only certain categories of suit against it, and bad faith claims are not among them. Mr. Garfinkel asserts to the contrary that the particular requirement to act in good faith found in section 627.351(6)(r) (2), suggests that the Legislature fully intended to allow a policy holder to assert a bad faith claim. The argument made by Citizens is more persuasive.
 

 There are a number of foundational concepts that guide us in this regard. Initially, when the language of a statute is clear and conveys a certain and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.
 
 Blanton v. City of Pinellas Park,
 
 887 So.2d 1224 (Fla.2004). It is when the statutory language is unclear that courts will apply rules of statutory construction and explore legislative history to determine legislative intent.
 
 Freeman v. First Union Nat’l Bank,
 
 865 So.2d 1272 (Fla.2004). In this case, both parties argue that the statute is clear and unambiguous, yet they reach utterly opposite conclusions as to its meaning. We agree that § 627.351(6)(r)l.a-e is unambiguous, but we agree with the interpretation articulated by Citizens. When the Legislature set forth five exceptions to its grant of sovereign immunity, it intended for there to be only five exceptions. What is unclear, however, is the effect of section 627.351(6)(r)(2), which contains the good faith language. To resolve the issue of whether the Legislature intended a sixth exception, therefore, we must drill deeper.
 

 As a matter of statutory construction, when, as in the present case, a statute articulates exceptions, no other exceptions may be implied.
 
 Dobbs v. Sea Isle Hotel,
 
 56 So.2d 341 (Fla.1952). Here, because the Legislature identified five exceptions to its grant of immunity, there is no reason to think that another grant would show up in a nearby but separate paragraph, unless specifically identified as such.
 

 
 *66
 
 Additionally, we know that in construing statutes involving sovereign immunity, any waiver of that immunity must be clear and unequivocal.
 
 Spangler v. Florida State Turnpike Auth.,
 
 106 So.2d 421, 424 (Fla.1958). There is no clear waiver of sovereign immunity in section 627.351(6)(r)(2). If there is a waiver there, it is quite murky.
 

 Mr. Garfinkel, however, alleges that his claim arises under section 624.155, Florida Statutes (2007). In fact, his amended complaint specifically sets forth that statute as the basis for the bad faith count, and asserts a right to punitive damages after the appropriate hearing is held. That statute, entitled “Civil Remedy,” provides that any person may bring a civil action against an insurer when such a person is damaged by the insurer not attempting in good faith to settle claims when, under all of the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for his or her interests. Certainly it must be conceded that Citizens fits within the definition of “insurer” for purposes of chapter 624. Section 624.03 defines an insurer to include “every person engaged as indemnitor, surety, or contractor in the business of entering into contracts of insurance or of annuity.” But the inquiry does not end there.
 

 Mr. Garfinkel, recognizing that section 624.155 applies generally to private insurers, does not claim that Citizens is an “authorized insurer”
 
 [2]
 
 for purposes of that statute. Rather, he asserts that bad faith liability of Citizens springs from section 627.351- — -the statute that created it. There is a fundamental problem with this argument. Mr. Garfinkel’s complaint specifically pleads that bad faith liability is founded on section 624.155(l)(b). If Citizens is not an authorized insurer under section 624.155(l)(b), then it cannot be subject to bad faith claims pursuant to it.
 

 The logical implication is that the Legislature created Citizens as a state entity and made it immune from suit except for those suits of a very particular variety. Nowhere in section 627.351(6)(r)l is there a specific exception stated for statutory bad faith claims under section 624.155(l)(b)(l). Moreover, the legislative history supports the view that there was no intention by the Legislature to subject Citizens to bad faith claims.
 

 During the 2007 legislative session, the House and Senate considered several bills affecting Citizens. One House Bill attempted to subject Citizens to “all remedies,”
 
 [3]
 
 while a Senate Bill attempted to add language that would have made a claim arising under Citizens’ duty to act in good faith one of the immunity exceptions.
 
 [4]
 
 This latter bill would have added the word “or” after the five exceptions and before the subparagraph requiring Citizens to act in good faith. The Senate Bill was later redrafted with the word “or” excluded. In the end the House Bill was rejected, and the Committee Substitute for the Senate Bill, which contains the current language of section 627.351(6)(r)2., was adopted. Thus, the Legislature was specifically presented with the opportunity to amend the statute to make certain that bad faith claims against Citizens would be authorized, but chose not to do so. Accordingly, the recent legislative history suggests that the Legislature did not intend for section 627.351(6)(r)2. to create a private right of action by policy holders against Citizens.
 

 
 *67
 
 When we consider other similar statutes involving parallel state residual market entities, we arrive at the same result. The legislative authorizations for the Florida Insurance Guarantee Association (“FIGA”), and the Florida Medical Malpractice Joint Under Writing Association (“FMMJUA”), demonstrate that the Legislature intended to shield these entities similar to Citizens from liability for bad faith. FIGA, FMMJUA and Citizens are all “insurance risk appointment plans” created to provide affordable insurance to applicants who are entitled, but who are unable to procure insurance from private insurers. Although FMMJUA concerns medical malpractice insurance, and FIGA pays covered claims under certain classes of insurance policies of insurers that have become insolvent,
 
 [5]
 
 they, together with Citizens, all fulfill the State’s public policy to make insurance available in high risk situations when private insurers are unwilling to provide such coverage.
 

 As with the Citizens sovereign immunity provision, the FIGA immunity statute provides, “There shall be no liability on the part of, and no cause of action of any nature shall arise against, any member insurer, the association or its agents or employees, the board of directors, the Chief Financial Officer, or the department or office or their representatives for any action taken by them in the performance of their powers and duties under this part.” § 631.66, Fla. Stat. (2007). In
 
 Fernandez v. Florida Ins. Guar. Ass’n, Inc.,
 
 383 So.2d 974, 975 (Fla. 3d DCA),
 
 review denied,
 
 389 So.2d 1109 (Fla.1980), our sister coui-t in the Third District held that this immunity language precluded a bad faith action for an insurer’s refusal to set-tie within policy limits.
 
 [6]
 

 See also Florida Ins. Guar. Ass’n v. Giordano,
 
 485 So.2d 453, 457 (Fla. 3d DCA 1986);
 
 Hudson Envtl. Servs., Inc. v. New Jersey Property-Liability Ins. Guar. Ass’n,
 
 372 N.J.Super. 284, 858 A.2d 39 (2004).
 

 Similarly, the FMMJUA immunity statute reads: “There shall be no liability on the part of, and no cause of action of any nature shall arise against, any member insurer, self-insurer, or its agents or employees, the Joint Underwriting Association or its agents or employees, members of the board of governors or the office or its representatives for any action taken by them in performance of their powers and duties under this subsection.” § 627.351(4)(c), Fla. Stat. (1993). In
 
 Florida Medical Malpractice Joint Underwriting Ass’n v. Indem. Ins. Co. of North America,
 
 689 So.2d 1040, 1041 (Fla.1996), the Florida Supreme Court held that this immunity language found in the very same section that contains Citizens enabling statute and -immunity provision, required dismissal of a lawsuit against FMMJUA for statutory and common law bad faith in the investigation, evaluation and settlement of a claim. The high court held that this “statute expressly states that ‘no cause of action of any nature’ shall arise against the petitioners.”
 
 Id.
 
 at 1042.
 

 A comparison of the three immunity provisions reveals that they all use essentially the same immunizing language: “There should be no liability on the part of, and no cause of action of any nature shall arise against....” Mr. Garfinkel argues that FIGA and FMMJUA are not applicable here because those statutes do not contain comparable language requiring
 
 *68
 
 them to act in good faith or providing any exceptions. This distinction is not meaningful, however, because none of the exceptions in section 627.351(6)(r) specifically allow bad faith claims, and the duty of Citizens to act in good faith does not include a private right of action. Statutory language that merely points to a benefit for a class of persons will not justify a judicial inference that the Legislature intended to create a private right of action to enforce delivery of those benefits.
 
 Murthy v. N. Sinha Corp.,
 
 644 So.2d 983 (Fla.1994). Absent an explicit expression of legislative intent to create a private right of action, none will be implied.
 
 Villazon v. Prudential Health Care Plan, Inc.,
 
 843 So.2d 842 (Fla.2003).
 

 Finally, we note that one of the exceptions from immunity for suits against Citizens is for “any willful tort.”
 
 See
 
 § 627.351(6)(r)l.a., Florida Statutes (2007). A bad faith claim, however, is not considered to be a willful tort that would give rise to a claim for damages.
 
 Allstate Ins. Co. v. Gibbs,
 
 340 So.2d 1202 (Fla. 4th DCA 1976),
 
 cert. dismissed,
 
 354 So.2d 980 (Fla.1977),
 
 receded from on other grounds by Hartford Accident and Indem. Co. v. U.S.C.P. Co.,
 
 515 So.2d 998 (Fla. 4th DCA 1987);
 
 Nationwide Mut. Ins. Co. v. Lowe,
 
 347 So.2d 630 (Fla. 4th DCA 1977). Rather, we have in essence viewed bad faith claims as comparable to claims for unfair settlement practices.
 
 Progressive Am. Ins. Co. v. Rural/Metro Corp. of Florida,
 
 994 So.2d 1202, 1208 (Fla. 5th DCA 2008) (citing
 
 Hartford Ins. Co. v. Mainstream Const. Group, Inc.,
 
 864 So.2d 1270, 1272 (Fla. 5th DCA 2004)).
 

 The reason why first-party bad faith claims are not considered to be willful torts is best explained by examining the history of this cause of action. A third-party bad faith action (that is, a claim against one’s own insurer for failing in good faith to settle a third-party’s claim, thus exposing the insured to liability in excess of the available insurance coverage), was recognized in Florida as part of the common law as early as 1938. The foundation for this claim is found in the fiduciary nature of the insurance carrier’s relationship with the insured. The carrier was required to act in good faith to negotiate a settlement for the benefit of its insured, and not to protect its own interest alone.
 
 Opperman v. Nationwide Mut. Fire Ins. Co.,
 
 515 So.2d 263, 265 (Fla. 5th DCA 1987),
 
 review denied,
 
 523 So.2d 578 (Fla.1988). Because of the perceived absence of the fiduciary relationship, however, there was no first-party bad faith action by an insured against the insurer recognized at common law.
 
 See Allstate Indem. Co. v. Ruiz,
 
 899 So.2d 1121 (Fla.2005);
 
 State Farm Mut. Auto. Ins. Co. v. Laforet,
 
 658 So.2d 55, 58-59 (Fla.1995);
 
 Baxter v. Royal Indem. Co.,
 
 285 So.2d 652 (Fla. 1st DCA 1973);
 
 cert. discharged,
 
 317 So.2d 725 (Fla.1975). Thus, unless the insured could allege an independent tort such as fraud, the only relief available on a first-party claim was a cause of action for breach of contract.
 
 Butchikas v. Travelers Indem. Co.,
 
 343 So.2d 816 (Fla.1976);
 
 Rubio v. State Farm Fire & Cas. Co.,
 
 662 So.2d 956, 957 (Fla. 3d DCA 1995),
 
 review
 
 denied, 669 So.2d 252 (Fla.1996);
 
 Opperman; Allstate Ins. Co. v. Kelley,
 
 481 So.2d 989 (Fla. 5th DCA 1986).
 

 The Legislature addressed this issue in 1982 by the adoption of section 624.155, Florida Statutes. As our Supreme Court has indicated, “[tjhrough this statute, the Legislature created a first-party bad faith cause of action.... ”
 
 Laforet,
 
 658 So.2d at 59. Thus, first-party bad faith causes of action now exist in Florida not because they are torts, but because they are a statutory cause of action. Accordingly, a
 
 *69
 
 first-party bad faith claim cannot be wedged into the statutory exception for willful torts because it is not a tort of any variety.
 

 In summary, we hold that Citizens is immune from first-party bad faith claims pursuant to section 627.351(6)(r)l. Likewise, we hold that Citizens is not subject to bad faith liability under section 624.155(l)(b)(l), as that statute is not applicable to it. Finally, we quash the discovery order dated April 15, 2009, and remand for further proceedings not inconsistent with this opinion. Prohibition, of course, applies only to the count seeking bad faith liability.
 

 PETITION FOR WRIT OF PROHIBITION GRANTED; ORDER QUASHED.
 

 SAWAYA and JACOBUS, JJ., concur.
 

 [1]
 

 . Citizens originally also sought common law certiorari. It abandoned this position at oral argument.
 

 [2]
 

 .
 
 See
 
 § 624.401, Fla. Stat. (2007).
 

 [3]
 

 . HB 7077E2 (April 26, 2007).
 

 [4]
 

 .SB 2498E1, § 5 (May 1, 2007).
 

 [5]
 

 .
 
 See O'Malley v. Florida Ins. Guar. Ass'n,
 
 257 So.2d 9, 10 (Fla.1971).
 

 [6]
 

 . In
 
 Jones v. Fla. Ins. Guar. Ass’n, Inc.,
 
 908 So.2d 435 (Fla.2005), the supreme court in dealing with a somewhat similar claim noted specifically that, “We do recognize, however, that no viable cause of action for bad faith may be asserted against FIGA.”
 
 Id.
 
 at 438.