[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12135
_____

D.C. Docket No. 9:10-cv-80804-JIC

PRUCO LIFE INSURANCE COMPANY,

Plaintiff-Counter Defendant-Appellee,

versus

WELLS FARGO BANK, N.A.,
as securities intermediary,

Defendant-Counter Claimant-Appellant.

_____

No. 13-15859
_____

D.C. Docket No. 1:12-cv-24441-FAM

PRUCO LIFE INSURANCE COMPANY,

Plaintiff-Appellant,

versus

U.S. BANK, N.A.,
as securities intermediary,

Defendant-Appellee.

———————————————

Appeals from the United States District Court
for the Southern District of Florida

———————————————

(February 27, 2015)

Before TJOFLAT and JULIE CARNES, Circuit Judges, and DUBOSE,[*] District
Judge.

JULIE CARNES, Circuit Judge:

> CERTIFICATION FROM THE UNITED STATES COURT OF
> APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME
> COURT OF FLORIDA PURSUANT TO FLORIDA
> CONSTITUTION ARTICLE V, § 3(B)(6).
>
> TO THE SUPREME COURT OF FLORIDA AND ITS HONORABLE
> JUSTICES:

These consolidated appeals require us to determine the validity of two

individuals' Stranger-Originated Life Insurance ("STOLI") policies that the issuing

insurance company sought to have invalidated several years after their issuance. In

support of the insurance company's effort is a Florida statute that requires a person

who procures life insurance to have an insurable interest in the life of the insured at

———————————————

[*] Honorable Kristi K. DuBose, United States District Judge for the Southern District of
Alabama, sitting by designation.

2

the inception of the policy.[1]  The insurance company contends that, as with most STOLI policies, there was no such interest when these policies were issued, which the company says entitles it to have the policies declared void.  Undermining the insurance company's argument, however, is another Florida statute requiring all insurance policies to include a clause providing that the policy is incontestable after it has been "in force" for two years.[2]  The policies at issue in this consolidated appeal contained such a clause, and the insurance company clearly failed to contest the policies within that two-year window.

Thus, the question before this Court is which statute controls.  Stated another way, when these two statutes collide, does Florida's interest in prohibiting the issuance of insurance policies purchased by an individual with no insurable interest trump its interest in requiring insurance companies to determine, within a designated period of time, whether a particular policy is subject to that or any other challenge?[3]  Florida law does not definitively answer these questions, and federal district courts have disagreed when asked how to interpret the above Florida

---

[1]  Fla. Stat. § 627.404 (2008).

[2]  Fla. Stat. § 627.455 (1982).

[3]  If the answer to this question is that the Florida statute requiring an insurable interest in the insured trumps the statute requiring an insurer to challenge a policy's validity within two years of issuance, a second question arises as to the Berger policy, discussed *infra.*  That question is whether § 627.404, the insurable interest statute, is violated when the individual who procures the insurance has the required insurable interest at the time of issuance, but nonetheless has procured the policy in bad faith.

3

statutes.  Accordingly, certification to the Florida Supreme Court is warranted pursuant to Florida Constitution Article V, § 3(b)(6).

## I.    BACKGROUND

The two cases before us involve three STOLI policies.  Wells Fargo, N.A., the present owner of a STOLI policy on the life of Arlene Berger, appeals a district court's final judgment, entered in favor of Pruco Life Insurance Company, invalidating this policy.  As to the second appeal before us, Pruco has appealed a different district court's order dismissing its claim seeking the invalidation of two STOLI policies issued on the life of Rosalind Guild.

### A.    The Berger Policy

Throughout 2005 and 2006, Arlene and Richard Berger attended financial planning seminars at which they were told that they could obtain "free life insurance."  The Bergers talked with insurance salesman Stephen Brasner, who arranged for them to participate in his STOLI scheme[4] by obtaining (1) financing for the payment of premiums from a third-party lender and (2) a fraudulent financial report listing Arlene Berger's net worth as $15.9 million and her annual income as $245,000.  Brasner then applied to Pruco for a $10 million insurance

---

[4] For a fuller explanation of the workings of STOLI transactions, see *PHL Variable Ins. Co. v. Bank of Utah*, Civ. No. 12-1256 ADM/JJK, 2013 WL 6190345, at *1 (D. Minn. Nov. 27, 2013) and Susan Lorde Martin, *Betting on the Lives of Strangers: Life Settlements, STOLI, and Securitization*, 13 U. Pa. J. Bus. L. 173, 187–88 (Fall 2010).

policy on the life of Arlene Berger, naming her husband Richard as beneficiary. Pruco issued the policy on April 27, 2006.

Brasner subsequently established an irrevocable trust to hold the Berger policy. The trust named Wilmington Trust Company as trustee and Richard Berger as co-trustee and beneficial owner. In conjunction with the financing agreement and the creation of the trust, Arlene Berger granted the third-party lender a power of attorney and the authority to obtain her medical records.

Despite their signed authorizations, the Bergers claim not to have realized the implications of these actions. Richard Berger was shocked when he discovered that Arlene Berger had granted an irrevocable power of attorney pursuant to the financing agreement. Moreover, according to the Bergers, they neither needed nor wanted life insurance when they joined Brasner's STOLI scheme, did not intend to pay any of the premiums, never had any intention of controlling or keeping any insurance procured through Brasner, and only accepted the policy because it was free.

At some point, ownership of the Berger policy was transferred to the trust. For their participation in this insurance policy transaction, the Bergers received a payment of nearly $173,000 from Brasner in May of 2008. Then, in September of 2008, Arlene Berger instructed Wilmington Trust to relinquish all her interests and

5

rights under the policy to the third-party lender in satisfaction of the financing agreement.  The policy was ultimately sold to a client of Wells Fargo.

On July 9, 2010, approximately four years after it had issued the Berger policy, Pruco filed suit against Wells Fargo asserting that the policy was void *ab initio* for lack of an insurable interest, as required by § 627.404.  The district court granted summary judgment to Pruco on its claim.  Adopting its previous analysis of this issue in an order denying Wells Fargo's motion to dismiss, the court held that there was no valid insurable interest in the life of the insured by the party procuring the insurance,[5] meaning that the policy ran afoul of Florida Statute § 627.404's requirement of such an interest at the time an insurance policy is issued. *See Pruco Life Ins. Co. v. Brasner*, No. 10-80804-CIV, 2011 WL 134056, at \*3–6 (S.D. Fla. Jan. 7, 2011) (Cohn, J.).  From this conclusion, the court reasoned that the policy was void *ab initio* and therefore the incontestability provision of § 627.455 did not bar Pruco's claim, asserted more than two years after issuance of the policy.

---

[5] The question whether the individual procuring the insurance for Mrs. Berger had the requisite "insurable interest" in her life was actually a bit more complicated than described above, and the factual wrinkle creating that complication will be addressed in the second question to the Florida Supreme Court.  But the district court did ultimately hold that the procurer of the insurance did not have the necessary interest, which therefore rendered the policy void *ab initio.*

6

**B.     The Guild Policy**

In September of 2005, insurance broker Gary Richardson persuaded octogenarian Rosalind Guild to participate in a $10 million STOLI scheme by offering her free life insurance and monetary compensation.  To implement the scheme, Richardson established an irrevocable trust to hold the Guild policies.  Richardson then submitted two life insurance applications to Pruco, each seeking a $5 million policy and listing Guild's daughter as primary beneficiary and the trust as contingent beneficiary.  It was understood that Guild's daughter would not receive the death benefit from the policies and that any beneficial interest would eventually be sold to an investor with no insurable interest in Ms. Guild's life.  In support of the applications, Richardson submitted a fraudulent financial statement portraying Guild's net worth as $19.2 million and annual income as $345,000.

Pruco issued the Guild policies on October 21, 2005.  A third party paid over $2 million in premiums over the course of the next few years.  Then, on February 13, 2008, Pruco received a request to change the ownership and beneficiary of the policies from the Guild Trust to securities intermediary, U.S. Bank, N.A., in connection with the sale of the beneficial interest in the policies to an investor.  Pruco made the requested change.

7

On December 17, 2012, approximately seven years after it had issued the Guild policies and almost five years after it had approved the change in beneficiary and ownership to U.S. Bank, Pruco filed suit against U.S. Bank asserting that the policies were void *ab initio* under § 627.404.  U.S. Bank filed a motion to dismiss Pruco's complaint.  Analyzing the interplay between the two Florida statutes differently than did the district court in the Berger case, the district court in Guild found that, because Pruco had run afoul of the two-year time limit provision to contest the policy, Pruco's claim was barred.  Accordingly, the district court granted U.S. Bank's motion to dismiss Pruco's claim.  *See Pruco Life Ins. Co. v. U.S. Bank*, No. 12-24441-CIV, 2013 WL 4496506, at *2, *5 (S.D. Fla. Aug. 20, 2013) (Moreno, J.).

## II.    DISCUSSION

### A.    Whether Pruco's Delay Bars Its Claim to Have the Insurance Policies Here Declared Void

Pruco argues that the Berger and Guild life insurance policies should be declared void because the purchasers of these policies lacked an insurable interest in the persons insured.  Pruco relies on Florida Statute § 627.404 (the "insurable interest statute"), which bars the purchase of a life insurance policy on another individual unless the benefits of the insurance contract are payable to the insured individual, his or her personal representative, or a person having an insurable

8

interest in the insured individual.[6]  Section 627.404 defines "insurable interest" to include "the life, body, and health of another person to whom the individual is closely related by blood or by law and in whom the individual has a substantial interest engendered by love and affection."  Fla. Stat. § 627.404(2)(b)(2).  Because the purchasers of the policies here did not have an insurable interest, as defined by statute, Pruco says the policies must be invalidated.

The present owners of the Berger and Guild policies (Wells Fargo and U.S. Bank) respond that, even if Pruco has a winning argument as to the lack of an "insurable interest," Pruco waited too long to make that argument and therefore its request to invalidate the policies should be denied.  Like Pruco, Wells Fargo and U.S. Bank have also found a law that supports their position:  Florida Statute § 627.455 ("the incontestability statute").  Section 627.455 states that "[e]very insurance contract shall provide that the policy shall be incontestable after it has been in force during the lifetime of the insured for a period of 2 years from its date

---

[6] Section 627.404 provides:

> Any individual of legal capacity may procure or effect an insurance contract on his or her own life or body for the benefit of any person, but no person shall procure or cause to be procured or effected an insurance contract on the life or body of another individual unless the benefits under such contract are payable to the individual insured or his or her personal representatives, or to any person having, at the time such contract was made, an insurable interest in the individual insured.  The insurable interest need not exist after the inception date of coverage under the contract.

Fla. Stat. § 627.404(1).

of issue[.]" Fla. Stat. § 627.455.[7]  Here, Pruco waited more than four years and seven years to challenge the Berger and Guild policies, respectively, based on the absence of an insurable interest at the time of the policies' issuance:  periods of time that put them well outside the two-year contestability period.  That being so, the present owners of the policies argue that Pruco's tardiness dooms its efforts to undo these insurance contracts, on which it had been readily accepting large premium payments without complaint for several years.

The question before this Court, then, is which of the above two statutes controls these disputes.  That the two district courts in the consolidated appeal before us reached different conclusions on the same question suggests that the answer is not clear cut, and this has proven to be the case.  The district court that ruled on the validity of the Berger policy (hereinafter, "the Berger court") held that the STOLI policy at issue was void *ab initio* because it violated § 627.404, the insured-interest statute.  A contract that is void *ab initio* is a contract that never existed.  The district court thus reasoned that the two-year incontestability provision required by § 627.455 never took effect because the incontestability period applies only to an insurance policy that has been "in force," and, with no party having a valid insurable interest, the Berger insurance policy was never "in

---

[7] Notably, § 627.455 does not itself impose an incontestability period, but rather mandates that every policy include a clause to that effect.  The Berger and Guild policies all contain such a clause, in conformity with the statute.

10

force." For that reason, the court concluded that the two-year contestability period was not an obstacle to Pruco's effort to invalidate the insurance policies. *Brasner*, 2011 WL 134056, at *4–6.

The district court that adjudicated the validity of the Guild policy ("the Guild court") took a different view of the interplay between the two relevant statutes, concluding that Pruco's tardy insurable-interest claim under § 627.404 was barred by the incontestability provision called for by § 627.455. *See U.S. Bank*, 2013 WL 4496506, at *2, *5. The Guild court likened § 627.455 to a statute of limitations that applies regardless of the basis of any challenge to the validity of the policy. *Id.* at *3.

As to the relative merits of the two courts' analyses, there are arguments to be made on both sides of the issue. Were we adding up the number of courts that favor one or the other position, the Berger court would find itself aligned with the majority view on this issue: that a statute requiring an insurable interest at a policy's issuance will take precedence over a statute rendering a policy immune from any challenges by the insurer after a designated period of time. *See W. Reserve Life Assur. Co. of Ohio v. ADM Assocs., LLC*, 737 F.3d 135, 143 (1st Cir. 2013); Susan Lorde Martin, *Life Settlements: The Death Wish Industry*, 64 Syracuse L. Rev. 91, 104 (2014). Answering a certified question from a federal

11

district court, the Delaware Supreme Court identified ten other states whose courts had held that a life insurance policy lacking an insurable interest was a void and illegal contract that could not be resurrected by an insurer's failure to challenge the policy within the statutory contestability period. *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust ex rel. Christiana Bank & Trust Co.*, 28 A.3d 1059, 1067 n.18 (Del. 2011) (collecting cases). The court interpreted Delaware law as being aligned with this majority view. *Id*. at 1068–76.

The Guild court, however, followed the minority position on this issue, which holds that the lack of an insurable interest renders an insurance policy merely voidable, not void *ab initio*. As this thinking goes, because the policy holder of a voidable insurance contract can, through an applicable defense, successfully resist an insurer's effort to invalidate the policy, a policy lacking a purchaser with an insurable interest similarly cannot be invalidated if the insurer has failed to make its challenge within the time period set out in an incontestability clause. *W. Reserve Life Assur. Co. of Ohio*, 737 F.3d at 143. At least two states follow this minority position: New York and Michigan. *See New England Mut. Life Ins. Co. v. Caruso*, 535 N.E.2d 270, 273–75 (N.Y. 1989); *Bogacki v. Great-West Life Assur. Co.*, 234 N.W. 865, 865–67 (Mich. 1931); *cf. Equitable Life Assur. Soc. of U.S. v. Poe*, 143 F.3d 1013, 1019–20 (6th Cir. 2013)

12

(acknowledging that Michigan strictly construes incontestability clauses).  Stated simply, the minority view holds that an incontestability clause applies, no matter the basis for an insurer's challenge to the validity of the policy.

As Pruco acknowledges, there are no cases decided by Florida courts that specifically address whether an incontestable provision bars a tardy challenge to the validity of a policy considered to be void *ab initio* because it lacked an insurable interest at its inception.[8]  Breaking down the analysis of each district court decision before us to determine what support under Florida law each might have, the Berger court noted that Florida law embraces both the public policy that prohibits an insurance company from contesting a policy after the contestability period expires as well as the public policy that an insurable interest is necessary for an insurance policy to be valid.  *Brasner*, 2011 WL 134056, at *6.  The court also

---

[8]  Other than the two district court cases now on review, the parties identify three other federal district court cases that touch on this precise question of Florida law.  *See PHL Variable Ins. Co. v. Hudson Valley, EPL, LLC*, Civ. Action No. 13-1562-SLR-SRF, 2014 WL 4635454, at *4–5 (D. Del. Sept. 16, 2014) (Fallon, Mag. J.) (interpreting Florida law to require invalidation of a policy, based on its lack of an insurable interest and notwithstanding the insurer's failure to comply with the time limits for challenge found in an incontestability clause) *adopted* Civ. No. 13-1562-SLR-SRF, 2014 WL 5088854 (D. Del. Oct. 8, 2014) (Robinson, J.); *The John Hancock Life Ins. Co. v. Rubenstein*, Case No. 09-21741-Civ-Ungaro, at 5 (S.D. Fla. Aug. 31, 2009) (Ungaro, J.) (same); *Sciaretta v. Lincoln Nat'l Life Ins. Co.*, 899 F. Supp. 2d 1318, 1328 (S.D. Fla. 2012) (Middlebrooks, J.) (dictum to the same effect).

While theses decision support the majority (and Pruco's) position, they offer no additional analysis other than that offered by the Berger court:  because a policy purchased without an insurable interest violates public policy and is therefore void *ab initio*, the policy never existed and hence an incontestability provision cannot apply to bar the insurer's request that the policy be invalidated.

13

recognized that neither party before it had cited any binding caselaw requiring the court "to reconcile one policy over the other." *Id.* Finally, the court acknowledged the reasoning behind the minority position, which holds that an incontestability clause trumps a requirement of an insurable interest. That is, the minority position encourages "insurers to timely investigate suspicious circumstances, protects policyholders, and prevent[s] insures from receiving a windfall years down the road." *Id.* (alteration in original). Yet, the Berger court also noted that, under the minority view, "if bad actors can disguise their fraud for two years, their hands are washed clean . . . and they are free to collect on their ill-gotten gains." *Id.* (citing *Settlement Funding, LLC v. AXA Equitable Life Ins. Co.*, 06 CV 5743(HB), 2010 WL 3825735, at *5 (S.D.N.Y. Sept. 30, 2010)).

Choosing between the two competing positions on this question, as it was required to do, the Berger court decided to follow the majority view: that because a policy without an insurable interest was void *ab initio*, the incontestability clause never took effect, and therefore it never expired. *Brasner*, 2011 WL 134056, at *6. In lining up with the minority view, however, the Guild court noted that an incontestability clause works to the mutual advantage of the insurer and the insured by giving the insured a guaranty against expensive litigation and giving the insurance company a reasonable period of time to ascertain whether the insurance

14

contract is subject to any valid challenges. *U.S. Bank*, 2013 WL 4496506, at *3

(citing *Allstate Life Ins. Co. v. Miller*, 424 F.3d 1113, 1115–16 (11th Cir. 2005)

(because Florida courts have "uniformly held" that § 627.455 bars an insurer from

belatedly contesting a policy based on alleged fraudulent misrepresentations in the

insurance application, an insured's use of an imposter to undergo the required

medical examination constituted fraud that rendered the policy voidable, not void

*ab initio*, thereby subjecting the insurance company to the two-year contestability

period)).

Characterizing the incontestability clause as a de facto statute of limitations,

the Guild court cited several Florida appellate decisions so applying the clause's

time limitation to bar an insurer's challenge based on claims of fraud from

misrepresenting the identity of the insured, the fact of death, and the absence of

pre-existing conditions. *Id.* The Guild court could find little distinction between

the fraud that underlay the misrepresentations in the case before it

(misrepresentations as to the identity of the insurable interest and the financial

resources of the named insured) and the fraud at issue in the above-cited Florida

cases. *Id.* at *5. In other words, "[i]n a STOLI context, a lack of insurable interest

may not be divided from the fraud that created it." *Id.* For these reasons, the Guild

15

court concluded that the Guild life insurance policies could not be invalidated because Pruco had waited too long to make its challenge.

Because there is no controlling Florida precedent on whether the incontestability clause can bar a challenge to the validity of an insurance policy lacking the necessary insurable interest at the time of issuance, we find it necessary to certify this question to the Florida Supreme Court, as set out below.

### B.    Whether An Insurable Interest in the Life of Mrs. Berger Existed at the Inception of Her Life Insurance Policy

If the Florida Supreme Court determines that Pruco's challenge to the validity of the Berger and Guild policies is barred by the incontestability clause mandated by § 627.455, then we pose no additional question for their decision.  If, however, the Florida Supreme Court decides that, notwithstanding Pruco's failure to contest the policies within two years of their issuance, Pruco may still seek to invalidate those policies as being non-compliant with § 627.404, then we must ask the court one more question regarding the validity of the Berger policy.[9]

Specifically, as set out above, Florida Statute § 627.404(1) permits a third party to procure an insurance policy on the life of another so long as the benefits under that policy are payable either to the named insured, her personal

---

[9]  There has been no briefing on whether the Guild policy potentially satisfied the "insurable interest" requirement at the time of issuance.  Further, at oral argument, counsel for Wells Fargo and U.S. Bank noted that the appeal concerning the Guild policy concerned only the issue of incontestability.

16

representative, or a person who, at the time the insurance contract is made, has an "insurable interest" in the insured individual. Further, an insurable interest is not required to exist after the "inception date of coverage." Fla. Stat. § 627.404(1). One can be said to have an "insurable interest" in the life of another individual to whom one is closely related by blood or by law and in whom one has a substantial interest engendered by love and affection. Fla. Stat. § 627.404(2)(b).

Although the Berger policy was eventually assigned to Wells Fargo, Mrs. Berger was listed as the owner and Mr. Berger was named as the beneficiary at its inception. Clearly, both of those individuals had an insurable interest in Mrs. Berger's life. Thus, Wells Fargo argued before the Berger court that the insurance contract complied with § 627.404's requirement that there be an insurable interest at the inception of the policy.

The Berger court rejected that argument. The court acknowledged that Florida law permits a life insurance policy to be assigned to an entity with no insurable interest in the life of the insured. Yet, citing authority from other federal Southern District of Florida cases interpreting Florida law, the court held that such assignments must be made in good faith, and not as sham assignments seeking to circumvent Florida's law prohibiting a wagering contract on the life of another, as embodied in § 627.404. If the insurance policy were procured with the intent of

17

making such sham assignments, the policy would be deemed to have been obtained in bad faith.

In identifying the applicable standard for determining whether a policy has been procured in bad faith, the Berger court held that bad faith is established if the policy was obtained with the intent that it would later be assigned to an entity or person with no insurable interest in the life of the insured.  Such an intent could be proven by evidence of: (1) a preexisting agreement or understanding that the policy would be assigned to one without an insurable interest; (2) the payment of premiums by someone other than the insured, and particularly by the assignee; and (3) the lack of a risk of actual future loss.  The Berger court's authority for this test was derived from other federal district court decisions.

Ultimately, the Berger court concluded that the circumstances surrounding the acquisition of the insurance policy on Mrs. Berger's life supported a conclusion that the policy was not obtained in good faith.  The court noted that the Bergers never intended to keep the policy and always knew that ownership would eventually be transferred to a third party who would receive the benefits should Mrs. Berger die after her two-year "free insurance period."  In addition, the Bergers never paid, nor intended to pay, any premium for the policy, and Brasner,

18

the insurance salesman, had created an "elaborate scheme" to make it look as if Mrs. Berger was paying the premiums.

Wells Fargo argues that Florida law does not support the importation of a good faith requirement into the insurable interest statute. It notes that § 627.404 only requires an insurable interest "at the moment of the policy's inception." Fla. Stat. § 627.404(1). Further, Florida's assignability statute generally permits the assignment of an insurance policy to a third party with no insurable interest. Fla. Stat. § 627.422 (1982). In support of this argument, Wells Fargo cites decisions from courts in other states that have refused to graft a good faith requirement onto similar statutory language.

Finally, even if § 627.404 contains an implied good faith requirement subject to the standards articulated by the Berger court, there is one potential factual wrinkle in this case. That is, assuming the accuracy of the Berger court's assumption--that, had Mrs. Berger died within that initial two-year period, her husband, the beneficiary of the policy, would have received the $10 million--does this fact undermine an argument that an insurable interest was lacking at the inception of the policy?

In short, the parties cite no controlling Florida legal authority concerning whether § 627.404 contains an implied good faith requirement and whether under

19

the facts of the cases before us, such a requirement would have been satisfied. Accordingly, we find ourselves in need of guidance on this point from the Florida Supreme Court.

## III.    QUESTIONS TO BE CERTIFIED TO THE FLORIDA SUPREME COURT

"When substantial doubt exists about the answer to a material state law question upon which the case turns," our caselaw indicates that it is appropriate to certify the particular question to the state supreme court in order "to avoid making unnecessary state law guesses and to offer the state court the opportunity to explicate state law." *Forgione v. Dennis Pirtie Agency, Inc.*, 93 F.3d 758, 761 (11th Cir. 1996).   *Accord Union Planters Bank, N.A. v. New York*, 436 F.3d 1305, 1306 (11th Cir. 2006) (certification of a dispositive question that is unanswered by the pertinent state law enables the federal appellate court "to avoid making unnecessary *Erie* guesses and to offer the state court the opportunity to interpret or change existing law") (internal quotation marks omitted).  Such doubt exists here on questions that are likely to recur and that are dispositive of the appeals before us.  Further, the Florida Constitution permits this Court to certify a question to the Florida Supreme Court if it "is determinative of the cause and for which there is no controlling precedent of the supreme court of Florida."  Fla. Const. art. V, § 3(b)(6).

20

As there is no controlling precedent from the Supreme Court of Florida, we respectfully certify the following questions for a determination of state law:

1. Can a party challenge an insurance policy as being void *ab initio* for lack of the insurable interest required by Fla. Stat. § 627.404 if that challenge is made after expiration of the two-year contestability period mandated by Fla. Stat. § 627.455?

2. Assuming that a party can do so, does Fla. Stat. § 627.404 require that an individual with the required insurable interest also procure the insurance policy in good faith?

The phrasing of the above questions should not restrict the Florida Supreme Court's consideration of the issues presented in these appeals. In order to assist in its consideration of the issues, the entire records, along with the briefs of the parties, shall be transmitted to the Florida Supreme Court. *Intervest Const. of Jax, Inc. v. Gen. Fid. Ins. Co.*, 662 F.3d 1328, 1333 (11th Cir. 2011).

**QUESTIONS CERTIFIED.**

21