# Supreme Court of Florida

_____

No. SC15-382
_____

**WELLS FARGO BANK, N.A., et al.**,
Appellants,

vs.

**PRUCO LIFE INSURANCE COMPANY**,
Appellee.

[September 22, 2016]

POLSTON, J.

This case is before the Court for review of two questions of Florida law certified by the United States Court of Appeals for the Eleventh Circuit that are determinative of a cause pending in that court and for which that court has indicated there appears to be no controlling precedent.[1]

In this dispute over the validity of three stranger-originated life insurance (STOLI) policies, the certified questions involve two Florida statutes, namely section 627.404(1), requiring that an insurable interest exist at the inception of

---

1. We have jurisdiction. See art. V, § 3(b)(6), Fla. Const.

each life insurance policy, and section 627.455, providing that an insurance policy is incontestable two years after its issuance. Specifically, the Eleventh Circuit certified the following questions:

> 1. Can a party challenge an insurance policy as being void <u>ab initio</u> for lack of the insurable interest required by Fla. Stat. § 627.404 if that challenge is made after expiration of the two-year contestability period mandated by Fla. Stat. § 627.455?
>
> 2. Assuming that a party can do so, does Fla. Stat. § 627.404 require that an individual with the required insurable interest also procure the insurance policy in good faith?

<u>Pruco Life Ins. Co. v. Wells Fargo Bank, N.A.</u>, 780 F.3d 1327, 1336 (11th Cir. 2015).

As explained below, we decline to read the statutes at issue contrary to their plain language in order to create a STOLI-policy exception to section 627.455's two-year contestability period. A STOLI transaction "is when an investor actively seeks out elderly people to purchase life insurance with the promise of 'no risk' money in exchange for transferring the policy to the investor after the general two year incontestability period has expired." 5 <u>Couch on Insurance</u> § 67.3 (2015 ed.). While such an exception might be wise public policy, that decision is for the Florida Legislature, not this Court.

## BACKGROUND

In Florida, insureds have long been permitted to sell their life insurance policies on the secondary market in accordance with Florida law permitting the

assignment of such policies unless the policy itself prohibits the assignment (which the policies at issue in this case did not). See § 627.422, Fla. Stat. The secondary market provides an alternative for policyholders desiring to cash out their policies because it allows them to sell to an investor at a higher amount than they would receive by surrendering the policies back to the insurance company. STOLI transactions, which are not prohibited by Florida law, are designed to take advantage of this secondary market by offering an insured (often an elderly one) "free" or "risk-free" insurance with the intent that—after the contestability period passes—the insured will receive some remuneration to transfer the policy to an investor that could not have taken out the policy in the first instance for lack of an insurable interest.

As the Eleventh Circuit explained, the insurance policies at issue in this case originated from STOLI schemes:

> The two cases before us involve three STOLI policies. Wells Fargo, N.A., the present owner of a STOLI policy on the life of Arlene Berger, appeals a district court's final judgment, entered in favor of Pruco Life Insurance Company, invalidating this policy. As to the second appeal before us, Pruco has appealed a different district court's order dismissing its claim seeking the invalidation of two STOLI policies issued on the life of Rosalind Guild.

> **A. The Berger Policy**

> Throughout 2005 and 2006, Arlene and Richard Berger attended financial planning seminars at which they were told that they could obtain "free life insurance." The Bergers talked with insurance salesman Stephen Brasner, who arranged for them to participate in his

STOLI scheme by obtaining (1) financing for the payment of premiums from a third-party lender and (2) a fraudulent financial report listing Arlene Berger's net worth as $15.9 million and her annual income as $245,000. Brasner then applied to Pruco for a $10 million insurance policy on the life of Arlene Berger, naming her husband Richard as beneficiary. Pruco issued the policy on April 27, 2006.

Brasner subsequently established an irrevocable trust to hold the Berger policy. The trust named Wilmington Trust Company as trustee and Richard Berger as co-trustee and beneficial owner. In conjunction with the financing agreement and the creation of the trust, Arlene Berger granted the third-party lender a power of attorney and the authority to obtain her medical records.

Despite their signed authorizations, the Bergers claim not to have realized the implications of these actions. Richard Berger was shocked when he discovered that Arlene Berger had granted an irrevocable power of attorney pursuant to the financing agreement. Moreover, according to the Bergers, they neither needed nor wanted life insurance when they joined Brasner's STOLI scheme, did not intend to pay any of the premiums, never had any intention of controlling or keeping any insurance procured through Brasner, and only accepted the policy because it was free.

At some point, ownership of the Berger policy was transferred to the trust. For their participation in this insurance policy transaction, the Bergers received a payment of nearly $173,000 from Brasner in May of 2008. Then, in September of 2008, Arlene Berger instructed Wilmington Trust to relinquish all her interests and rights under the policy to the third-party lender in satisfaction of the financing agreement. The policy was ultimately sold to a client of Wells Fargo.

On July 9, 2010, approximately four years after it had issued the Berger policy, Pruco filed suit against Wells Fargo asserting that the policy was void ab initio for lack of an insurable interest, as required by § 627.404. The district court granted summary judgment to Pruco on its claim. Adopting its previous analysis of this issue in an order denying Wells Fargo's motion to dismiss, the court held that there was no valid insurable interest in the life of the insured by the party procuring the insurance, meaning that the policy ran afoul of

Florida Statute § 627.404's requirement of such an interest at the time an insurance policy is issued. See Pruco Life Ins. Co. v. Brasner, No. 10-80804-CIV, 2011 WL 134056, at *3-6 (S.D. Fla. Jan. 7, 2011) (Cohn, J.). From this conclusion, the court reasoned that the policy was void ab initio and therefore the incontestability provision of § 627.455 did not bar Pruco's claim, asserted more than two years after issuance of the policy.

### B. The Guild Policy

In September of 2005, insurance broker Gary Richardson persuaded octogenarian Rosalind Guild to participate in a $10 million STOLI scheme by offering her free life insurance and monetary compensation. To implement the scheme, Richardson established an irrevocable trust to hold the Guild policies. Richardson then submitted two life insurance applications to Pruco, each seeking a $5 million policy and listing Guild's daughter as primary beneficiary and the trust as contingent beneficiary. It was understood that Guild's daughter would not receive the death benefit from the policies and that any beneficial interest would eventually be sold to an investor with no insurable interest in Ms. Guild's life. In support of the applications, Richardson submitted a fraudulent financial statement portraying Guild's net worth as $19.2 million and annual income as $345,000.

Pruco issued the Guild policies on October 21, 2005. A third party paid over $2 million in premiums over the course of the next few years. Then, on February 13, 2008, Pruco received a request to change the ownership and beneficiary of the policies from the Guild Trust to securities intermediary, U.S. Bank, N.A., in connection with the sale of the beneficial interest in the policies to an investor. Pruco made the requested change.

On December 17, 2012, approximately seven years after it had issued the Guild policies and almost five years after it had approved the change in beneficiary and ownership to U.S. Bank, Pruco filed suit against U.S. Bank asserting that the policies were void ab initio under § 627.404. U.S. Bank filed a motion to dismiss Pruco's complaint. Analyzing the interplay between the two Florida statutes differently than did the district court in the Berger case, the district court in Guild found that, because Pruco had run afoul of the two-year time limit

provision to contest the policy, Pruco's claim was barred. Accordingly, the district court granted U.S. Bank's motion to dismiss Pruco's claim. See Pruco Life Ins. Co. v. U.S. Bank, No. 12-24441-CIV, 2013 WL 4496506, at *2, *5 (S.D. Fla. Aug. 20, 2013) (Moreno, J.).

Pruco Life Ins. Co., 780 F. 3d at 1329-31 (footnotes omitted).

## ANALYSIS

Whether the Berger or Guild trial court's ruling is correct depends upon the interplay between Florida's insurable interest and incontestability statutes, and we look to the plain language of these statutes. See Thayer v. State, 335 So. 2d 815, 816 (Fla. 1976) ("To determine the legislative intent [this Court] look[s] to the plain language of the statute.").

Florida's insurable interest statute provides in pertinent part:

Any individual of legal capacity may procure or effect an insurance contract on his or her own life or body for the benefit of any person, but no person shall procure or cause to be procured or effected an insurance contract on the life or body of another individual unless the benefits under such contract are payable to the individual insured or his or her personal representatives, or to any person having, at the time such contract was made, an insurable interest in the individual insured. The insurable interest need not exist after the inception date of coverage under the contract.

§ 627.404(1), Fla. Stat. Section 627.404(2)(b)2. defines "insurable interest" to include the interest of "[a]n individual . . . in the life, body, and health of another person to whom the individual is closely related by blood or by law and in whom the individual has a substantial interest engendered by love and affection."

- 6 -

Florida's incontestability statute provides:

> Every insurance contract shall provide that the policy shall be incontestable after it has been in force during the lifetime of the insured for a period of 2 years from its date of issue except for nonpayment of premiums and except, at the option of the insurer, as to provisions relative to benefits in event of disability and as to provisions which grant additional insurance specifically against death by accident or accidental means.

§ 627.455, Fla. Stat. The Berger and Guild policies at issue contained the statutorily-required incontestability clause.

Under the plain language of the insurable interest statute, section 627.404, the policies on the lives of Ms. Berger and Ms. Guild, at their inception, benefitted individuals with insurable interests. Specifically, Ms. Berger's policy benefitted her husband, and Ms. Guild's policies benefitted her daughter.

While the Berger and Guild policies were procured in furtherance of STOLI schemes, the incontestability statute, section 627.455, by its plain language does not authorize a belated challenge to a policy, which has the required insurable interest as the result of a STOLI scheme. The statute does, however, include other exceptions to the two-year time bar (for premium nonpayment and other exceptions available at the insurer's option), indicating that the Florida Legislature specifically intended to limit the exceptions to those listed in the statute. See Citizens Prop. Ins. Corp. v. Perdido Sun Condo. Ass'n, Inc., 164 So. 3d 663, 666 (Fla. 2015) ("[W]here the Legislature articulates clear exceptions to a statute, 'no

other exceptions may be implied.' " (quoting <u>Citizens Prop. Ins. Corp. v. Garfinkel</u>, 25 So. 3d 62, 65 (Fla. 5th DCA 2009))).

The point of a STOLI scheme is for the insured to work with an investor to create the insurable interest necessary, hold the policy until the two-year contestability period expires, and then transfer the policy as permitted by section 627.422 to an investor who would not have had the insurable interest required to procure the policy in the first place. Thus, as a result of STOLI schemes, life insurance policies like the Berger and Guild policies, which at their inception named members of the insureds' immediate family as beneficiaries, have the insurable interest required by section 627.404. <u>See</u> <u>PHL Variable Ins. Co. v. Bank of Utah</u>, 780 F.3d 863, 871 (8th Cir. 2015) ("Whether the insured has an agreement with an insurance agent or broker or a premium financing company at the time the policy is issued that it will be sold, either to an identified person who lacks an insurable interest or, more typically, into a secondary market of insurance policy investors, is a risk the insurer can promptly investigate . . . . Therefore, absent a supervening statute, the defense [that the policy is void for lack of an insurable interest] is subject to the [statutory] incontestability provision[.] <u>To declare that a facially valid policy on which [the insurance company] collected substantial premiums for over four years was never 'in force' is simply a fiction</u>.") (emphasis added) (footnote omitted).

Accordingly, under the plain language of section 627.455, a policy that has the required insurable interest at its inception, even where that interest is created as the result of a STOLI scheme, is incontestable after two years. See also Prudential Ins. Co. of Am. v. Prescott, 176 So. 875, 878 (Fla. 1937) (explaining that an incontestability clause is "in the nature of, and serves a similar purpose as, a statute of limitations"); Paul Revere Life Ins. Co. v. Damus, Ecker, Rosenthal & Marshall, M.D., 864 So. 2d 442, 444 (Fla. 3d DCA 2003) ("The provision that a policy shall be incontestable after it has been in force during the lifetime of the insured for a period of two years . . . means [that,] within the limits of the coverage the policy shall stand, unaffected by any defense that it was invalid at its inception.") (emphasis added) (citation omitted).

## CONCLUSION

Because STOLI policies like the Berger and Guild policies at issue have the insurable interest required by section 627.404(1) at their inception, they become incontestable two years after their issuance under the plain language of section 627.455. Accordingly, we rephrase the questions certified by the Eleventh Circuit into the following question:

> Can a party challenge the validity of a life insurance policy after the
> two-year contestability period established by section 627.455 because
> of its creation through a STOLI scheme?

We answer this rephrased question in the negative and return this case to the Eleventh Circuit.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, and PERRY, JJ., concur. CANADY, J., concurs in result with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

CANADY, J., concurring in result.

Although I agree with the majority's answer to the rephrased certified question, I do not concur with the suggestion that the existence of an insurable interest at the inception of a policy is a precondition for operation of the incontestability provisions of section 627.455, Florida Statutes. That statute does not expressly provide that the existence of an insurable interest at inception is a precondition for its operation. Whether such a precondition is implicit in the statutory scheme is a question that is not actually presented by this case but remains for resolution in a case where it is presented.

Certified Question of Law from the United States Court of Appeals for the Eleventh Circuit - Case Nos. 13-12135 and 13-15859

Raoul G. Cantero, III, Maria Josefa Beguiristain, and Lawrence Gordon Horsburgh of White & Case LLP, Miami, Florida; John Kressfield Shubin and Juan Jose Farach, Jr. of Shubin & Bass, P.A., Miami, Florida,

for Appellants Wells Fargo Bank, N.A. and U.S. Bank, N.A.

Bruce S. Rogow and Tara A. Campion of Bruce S. Rogow, P.A., Fort Lauderdale, Florida; Stephen A. Serfass, D. Alicia Hickok, and Nolan B. Tully of Drinker Biddle & Reath LLP, Philadelphia, Pennsylvania; and Wendy Lynn Furman of Pett Furman PL, Boca Raton, Florida,

for Appellee

Jesús E. Cuza, J. Raul Cosio, Monica Vila Castro, and Rebecca Jo Canamero of Holland & Knight LLP, Miami, Florida,

for Amici Curiae Full Value Partners L.P. and Life Insurance Settlement Association

Jason Anthony Richardson, David T. McDowell, and Hutson B. Smelley of Edison, McDowell & Hetherington LLP, Houston, Texas,

for Amicus Curiae The American Council of Life Insurers